## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 21-10630-tmd** |
| **WC 717 N. HARWOOD PROPERTY, LLC** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

### DEBTOR'S EMERGENCY MOTION FOR INTERIM ORDER
### AUTHORIZING USE OF CASH COLLATERAL AND
### PROVIDING ADEQUATE PROTECTION

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

WC 717 N. Harwood Property, LLC, (the "**Debtor**") files this motion (this "**Motion**") seeking an interim order and a final order from the Court (i) authorizing the use of cash collateral pursuant to sections 105, 361, 362, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. § § 101 et. seq. (the "**Bankruptcy Code**") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rule**" or "**Bankruptcy Rules**"); and (ii) granting adequate protection to SKW - B Acquisitions Seller J, LLC ("**Noteholder**" or "**SKW – B**"), as successor in interest to JPMorgan Chase ("**Original Lender**").   In support of this Motion, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding, and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for relief requested herein are Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

## SUMMARY OF REQUESTED RELIEF

3.      The Debtor seeks an order of this Court authorizing it to use cash collateral of Noteholder pursuant to the terms and conditions set forth in the attached interim order and pursuant to a final order to be heard at a later time.  The Debtor believes that Noteholder is adequately protected through, among other things, a substantial equity cushion with respect to its collateral, certain improved real property described further below, the Debtor's agreement to pay to Noteholder contract rate interest, and by the use of cash collateral to maintain that collateral, as well as the replacement liens that the Debtor proposes to grant the Noteholder.

## BACKGROUND

1.      The Debtor's principal asset is an approximately one acre a tract of real property improved by a class A, thirty-four story office building located in the downtown Dallas, Texas central business and museum districts (the "**Property**").

2.      On August 3, 2021 (the "**Petition Date**"), the Debtor commenced this chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").  The Debtor, as single asset real estate entity as defined by section 101(51B) of the Bankruptcy Code, is operating its businesses and managing the Property as a "Debtor in Possession" pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case, and no committees have been appointed or designated.

3.      The Debtor is operated through its sole member, WC 717 N Harwood Equity, LLC. The Property is managed on a day-to-day basis by Colliers International under a certain Management Agreement with the Debtor. The Property currently is approximately 77% leased to over 25 office tenants, including several tenants who host their global headquarters at the Property.  The Property currently generates monthly rents and related charges of $965,600 and is

projected to continue doing so for the foreseeable future, with rental increasing significantly in 2021 as the Debtor's anchor tenant commences its lease payments.

4.     The Debtor acquired the Property in 2014 and refinanced it in 2019 with the Original Lender, as evidenced by (among other things) that certain loan agreement dated August 9, 2019 (the "**Loan Agreement**") and a first lien note (the "**Note**") secured by a deed of trust (the "**Deed of Trust**").

5.     On or about March 2021, the Noteholder purchased the Loan from the Original Lender.  As of the Petition Date, the Debtor's books and records reflect that it was indebted to the Noteholder on the Loan in the amount of approximately $72,000,000. (the "**Loan Debt**"). Based upon recent appraisal, the Debtor believes there is a significant equity cushion in the Property in excess of the Loan Debt.

6.     Prior to filing this Motion, the Debtor has engaged in negotiations with Noteholder regarding the use of cash collateral and the Debtor's operations, as well as certain cash management logistics.  Based on those negotiations, the Debtor believes that the parties have reached agreement regarding all material terms of the use of Cash Collateral through September 30, 2021, as provided in the form of proposed Agreed Interim Cash Collateral Order attached hereto as **Exhibit A** (the "**Interim Order**").

7.     In addition to the operating cash reflected in Exhibit A, Noteholder is also in possession of certain cash reserves of Debtor for insurance, taxes, capital improvements and other excess cash reserves, for which Debtor reserves all rights.

**8.**     Debtor maintains the following pre-petition bank accounts at PNC Bank, N.A. ("**PNC**"): (a) a lockbox account for the receipt of rents, which is subject to a Deposit Account Control Agreement between the Debtor and the Noteholder, referenced as Account No. ******8975) (the "**Lockbox Account**"); and a general account for the payment of expenses and

-3-

other disbursements, referenced as Account No. ******8983 (the "**General Account**"). PNC has requested that any use of funds from either the Lockbox Account or the General Account (in which substantially all of the Debtor's cash is held), be authorized by order of this Court. The Debtor requests that it be permitted and authorized to use the cash balances in its General Account for all payments authorized under the Budget (as defined below) through September 30, 2021, or alternatively, that it be permitted to transfer the funds in the General Account to the Debtor's debtor in possession account, referenced as Account No. ******6192 (the "**DIP Account**").

## <u>REQUEST FOR USE OF CASH COLLATERAL</u>

9.     Cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes proceeds, products, offspring, rents, or profits or property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a).

10.     11 U.S.C. § 363(c)(2) states as follows:

The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless

(A)     each entity that has an interest in such cash collateral consents; or

(B)     the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

**11.**     To the extent 11 U.S.C. § 363(c)(2) is applicable, the Debtor require the use of cash created from the operations of the Property, which is subject to the lien in favor of Noteholder (the "**Cash Collateral**") to pay the reasonable and necessary operating expenses,

-4-

including, but not limited to utility charges, insurance and taxes. The Debtor's use of this Cash Collateral is necessary to preserve and increase the value of the Debtor's collateral and the Debtor's estates for the benefit of all creditors, including the Noteholder.

## A. Grounds for Relief Requested

12. Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if those having an interest in such cash collateral consent or the court authorizes its use. *See* 11 U.S.C. § 363(c)(2). The use of cash collateral, however, may be prohibited or conditioned, upon proper request, as is necessary to adequately protect any interest in cash collateral. *See* 11 U.S.C. § 363(e). The burden to demonstrate that the cash constitutes cash collateral belongs to the party claiming an interest in that cash and is not the debtor's burden to prove the contrary. *See* 11 U.S.C. § 363(o)(2).

13. A court may authorize the use of cash collateral upon showing that those with an interest in the cash collateral are adequately protected.[1] Adequate protection requires examination of the creditor(s)' aggregate collateral position, not simply protection of its lien on cash. Adequate protection may be provided by granting replacement or additional liens "to the extent [that the use of cash collateral] results in a decrease in the value of [an] entity's interest in property." *See* 11 U.S.C. § 361(2). Authorizing a debtor to use cash collateral on an interim basis is appropriate where, as here, continuing the business as a going concern will cause the generation of future revenues upon which the secured lender is granted replacement liens and preserve the value of the underlying assets.[2]

---

[1] *See In re Las Torres Dev., LLC*, 413 B.R. 687, 694–95 (Bankr. S.D. Tex. 2009); *In re Harrington and Richardson, Inc.*, 48 B.R. 431, 433 (Bankr. D. Mass. 1985); *In re Certified Corp.*, 51 B.R. 768, 770 (Bankr. D. Hawaii 1985) ("It is well established that a debtor is entitled to use cash collateral upon proof of adequate protection.").

[2] *See, e.g., In re Neise, Inc.*, 16 B.R. 600 (Bankr. D. Fla. 1981); *In re Certified Corp.*, 51 B.R. 768 (Bankr. D. Hawaii 1985); *In re Post-Tron Systems, Inc.*, 106 B.R. 345 (Bankr. D.R.I. 1989).

14.     By authorizing the Debtor to use cash collateral, the Court will place the Debtor in a position to fund its operating expense and allow it to operate as a going concern for the immediate future.  The Debtor needs to use cash collateral in order, inter alia, to pay essential on-going business obligations, such as insurance, utility, maintenance and future tax obligations. Without the authority to use Cash Collateral, the Debtor will be significantly hindered in its ability to fund its business operations in a manner that will allow the Debtor to continue to operate as a going concern and to manage the Property to service its very valuable tenants, to the detriment of all of Debtor's creditors.

**B.      Offer of Adequate Protection and Summary of Cash Collateral Order**

15.     Attached hereto as **Exhibit A** is the Interim Order authorizing the Debtor's use of Cash Collateral to pay post-petition budgeted expenses though and including September 30, 2021, as may be extended by agreement of the parties.  Attached to this Motion as **Exhibit B** is a proposed budget of the Debtor's operations that itemizes the use of cash through and including September 30, 2021  (the "**Budget**").  The proposed order is consistent with Local Rules.  The budget items set forth in the Budget are necessary to avoid immediate and irreparable harm prior to a final hearing on the Motion.

16.     As set forth in the Interim Order, the Debtor contends that the Noteholder's interest in the Cash Collateral is adequately protected by (among other things) (a) the amount by which the Property's value exceeds the Loan Debt, (b) the use of Cash Collateral to preserve the value of the Property, and (c) the issuance of replacement liens. As additional adequate protection, the Debtor has agreed to commence making monthly adequate protection payments beginning on September 1, 2021, in the amount equal to the monthly interest otherwise payable on the Loan.

5636857.1 FJR 23081.20

17.     Additionally, because the use of the Cash Collateral is wholly in support of continued operation of the Property and issuance of Replacement Liens (as defined below) serve as additional adequate protection, adequate protection payments are not warranted under the circumstances.  Therefore, the Debtor's offer of adequate protection for the Interim Order is as follows:

a)      Noteholder will be granted a replacement lien (the "**Replacement Lien**") of the same extent, validity and priority as its prepetition liens in its collateral, with the exceptions and provisions that follow, with the same priority as their pre-petition lien, if any, and solely to the extent that pre-petition Cash Collateral is used;

b)      The Replacement Lien will not prime any validly attached and properly perfected lien held by a third party on specific property of the Debtor as of the Petition Date;

c)      The Replacement Lien will not attach to chapter 5 actions of the Debtor (*but will attach to the proceeds of the recovery upon such actions*);

d)      The Replacement Lien will attach to unencumbered property of the Debtor, if any, or the proceeds from any sale of any unencumbered property;

e)      All post-petition expenditures of Cash Collateral made by the Debtor with Lender consent prior to entry of this Order shall be entitled to the same protections as expenditures made subsequent to entry of the Interim Cash Collateral Order.

f)      The Replacement Lien will attach only to the extent that cash used by the Debtor is ultimately determined by the Court to be Cash Collateral of Noteholder;

g)      The Replacement Lien will not apply to any reduction in cash value caused from the payment of an expense that is later surcharged against Noteholder's collateral based on Section 506(c) of the Bankruptcy Code;

h)      Subject to the limiting conditions on the Replacement Lien, the Replacement Lien will be binding upon any subsequently appointed chapter 11 or chapter 7 trustee;

i)    The cash will be used to continue the operations of the Debtor and therefore maintain the going concern value of the aggregate of Noteholder's Collateral; as such, the use of cash will be regulated by a preapproved budget to assure that appropriate operating expenses are being paid and that no inappropriate expense is paid; and

j)    Debtor reserves the right to seek a provision in the final Cash Collateral Order or any future budget providing a carve out for approved estate professionals, including but not limited to, Debtor's counsel, any counsel for a statutorily formed committee, as well as any United States Trustee Fees.

18.    The Debtor believes that the terms of the proposed Interim Order are fair and reasonable under the circumstances. The Debtor asserts that the aggregate value of Noteholder's Cash Collateral will not diminish as a result of the use of cash in this case.

19.    Given that the interests of Noteholder will be adequately protected, it is in the best interest of the Debtor, its estates, and all of its creditors for the Debtor to be able to continue operations and for the Debtor to be authorized to use Cash Collateral, even without Noteholder's consent.

## NOTICE OF THIS MOTION

20.    The Debtor has provided notice of the filing of the Motion either by electronic mail, facsimile, overnight mail or regular mail to: (i) the Office of the United States Trustee; (ii) the Debtor' 20 largest unsecured creditors; (iii) counsel to Noteholder; (iv) the Internal Revenue Service; (v) counsel for PNC Bank, N.A., and (vi) all parties entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013 (collectively, the "**Notice Parties**"). Due to the nature of the relief requested herein, the Debtor submit that no other or further notice is required.

## REQUEST FOR RELIEF

21.    The Debtor respectfully requests that, as provided in the Interim Order: (a) it be authorized to use cash collateral for the purposes of paying necessary business expenses as allowed by section 363 of the Bankruptcy Code, and that the Court grant Noteholder

5636857.1 FJR 23081.20

Replacement Liens on post-petition assets, as allowed by sections 361, 363 and/or 364 of the Bankruptcy Code, consistent with the terms and provisions contained in this Motion; and (b) that the Debtor be authorized and permitted to utilize the funds in its General Account to satisfy the budget items contained in the Budget.

**ACCORDINGLY, FOR THE FOREGOING REASONS,** the Debtor respectfully requests the Court (i) authorize the interim use of Cash Collateral pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b); (ii) grant adequate protection to the prepetition secured lender; and (iii) grant such other relief and further relief as the Court may deem proper.

Dated the 7th day of September 2021.

Respectfully submitted,

**FISHMAN JACKSON RONQUILLO PLLC**

  /s/ Mark H. Ralston  
Mark H. Ralston
State Bar No. 16489460
Fishman Jackson Ronquillo PLLC
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972) 419-5544
Facsimile: (972) 4419-5501
E-mail: mralston@fjrpllc.com

PROPOSED COUNSEL FOR DEBTOR
WC 717 N. HARWOOD PROPERTY, LLC

5636857.1 FJR 23081.20

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the undersigned caused a true and correct copy of the foregoing document to be served on the parties listed on the attached service list by First Class United States Mail, on the persons listed below by email as indicated, and on all persons receiving electronic notice of filings in this case through the ECF system, on this, the 7th day of September 2021.

Office of the United States Trustee:
Deborah Bynam
E-mail: Deborah.A.Bynum@usdoj.gov


Counsel for SKW-B Acquisitions Seller J, LLC
Theresa Driscoll
E-mail: tdriscoll@moritthock.com

Matthew Contreras
E-mail: MContreras@skwfunding.com


Counsel for PNC Bank, N.A.
William G. Gardner
E-mail: william.g.gardner@pnc.com


                                                /s/ Mark H. Ralston
                                               Mark H. Ralston

5636857.1  FJR 23081.20

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

IN RE: § Chapter 11
§
WC 717 N HARWOOD PROPERTY, LLC, § Case No. 21-10630-tmd
§
    Debtor. §
_____§

**AGREED ORDER AUTHORIZING DEBTOR'S (A) USE OF CASH COLLATERAL
PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND
GRANTING ADEQUATE PROTECTION, AND (B) SCHEDULING A
<u>FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001</u>**

    This matter came before the Court pursuant to the Emergency Motion for Interim and Final Order Authorizing Cash Collateral, if any, Pursuant to 11 U.S.C. § 363 (the "<u>Motion</u>") filed by the above-captioned debtor ("<u>Debtor</u>").  Based on the Motion and the entire record before the Court,

    **THE COURT HEREBY FINDS AND CONCLUDES** as follows: [1]

    A.    On August 3, 2021 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11, thereby commencing this Chapter 11 case (the "<u>Bankruptcy Case</u>").

---

[1] Capitalized terms not otherwise defined in this Order shall have the same meaning as defined in the Motion.

EXHIBIT A – Page 1

B.     This Court has jurisdiction over the Bankruptcy Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.     The Debtor owns a multi-tenanted commercial office building located at 717 Harwood, Dallas, Texas (the "Property").

D.     The Debtor, as borrower, obtained a mortgage loan (the "Loan") from JPMorgan Chase Bank, N.A. ("Original Lender") pursuant to a loan agreement, dated as of August 9, 2019 (as amended from time to time, the "Loan Agreement").

E.     The Loan is evidenced by (i) Second Amended and Restated Promissory Note A-1 made by WC 717 N Harwood Property, LLC in favor of Original Lender in the principal amount of $55,277,377.00 (the "A Note") and (ii) Amended and Restated Promissory Note B-1 made by WC 717 N Harwood Property, LLC in favor of Original Lender in the principal amount of $20,000,000.00 (the "B Note" and together with A Note, the "Notes").

F.     The Loan is secured by, among other things, a certain *Deed of Trust, Assignment of Leases and Rents and Security Agreement*, dated as of August 9, 2019 (as amended on September 26, 2019, the "Deed of Trust" and together with the Notes, the "Loan Documents").  Pursuant to certain assignment agreements, SKW - B is the successor to the Original Lender under the Loan Documents.

G.     Pursuant to the Deed of Trust, SKW – B currently holds and maintains properly perfected first priority liens in certain real estate and improvements, including the Property. To perfect the liens granted to the Original Lender, the Deed of Trust was recorded with the County Clerk of Dallas, Texas.

EXHIBIT A – Page 2

H.     The Debtor hereby acknowledges and admits that as of the Petition Date, the Debtor owed SKW - B for monies loaned under the terms of the Loan Documents a principal amount of $74,231,017.32 plus accruing interest, fees, costs, and other amounts owing under the Loan Documents and less any escrow and reserve balances held by SKW – B (together, the "Indebtedness").  The Debtor hereby acknowledges and admits that default interest under the Loan Documents continues to accrue postpetition at the rate set forth in the Loan Documents from the Petition Date until such time as the Indebtedness owing under the Loan Documents is paid in full.

I.     Under the Deed of Trust, the Debtor granted to SKW – B (as assignee) a first priority lien in certain real estate and improvements, including the Property (the "Collateral").  The Collateral includes, among other things, all rents issued, profits, income, cash proceeds and other cash equivalents, and all cash and cash equivalent proceeds of the Property wherever located, constituting cash collateral of the Debtor within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral").  The Debtor acknowledges and admits, on its own behalf and on behalf of its estate, that SKW – B holds properly perfected, non-avoidable liens and security interests against the Collateral, including the Cash Collateral, as security for the Indebtedness.

J.     The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of the Property without the use of Cash Collateral.  The ability of the Debtor to pay operating expenses is essential to the Debtor's continued viability. It is in the best interests of the Debtor's estate to have continued use of Cash Collateral for the operation of the Property.

K.     The Debtor has requested that SKW - B consent to the interim and limited use of Cash Collateral.  As evidenced by the undersigned counsel, SKW - B is willing to allow the Debtor to use Cash Collateral on an interim basis pursuant to the terms and conditions set forth in this

EXHIBIT A – Page 3

Order. The terms and conditions of the proposed use of Cash Collateral pursuant to this Order are fair and reasonable, were negotiated by the parties in good faith at arm's length, and the parties otherwise acted in good faith. SKW - B has not agreed to any further or other use of Cash Collateral for any other purpose except as set forth in this Order.

L.       The Debtor has provided sufficient notice of the Court's initial hearing resulting in the entry of this Order. Sufficient and adequate notice under the circumstances of the Motion and the relief granted in this Order has been given.

M.      Furthermore, to enable the Debtor to use the Cash Collateral, SKW – B hereby consents to the Debtor's transfer thereof comprising funds from its prepetition cash management account at PNC Bank, N.A. (Account No. ******8983) (the "PNC Cash Management Account") to a new debtor in possession account opened postpetition at Metropolitan Commercial Bank (Account No. ******6192) (the "DIP Account").

N.      Based on the record before this Court, there is good cause for the Court to authorize the Debtor's interim use of Cash Collateral under the terms and conditions stated herein.

O.      Each of the foregoing findings by the Court will be deemed a finding of fact if, and to the extent, that it contains factual findings and a conclusion of law if, and to the full extent, that it makes legal conclusions.

Based upon the foregoing findings and conclusions, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** as follows:

1.       The Motion is GRANTED on a further interim basis as provided in this Order.

5637605.1  FJR 23081.20

2.      Pursuant to Section 363(c) of the Bankruptcy Code, the Debtor shall be, and hereby is, authorized to use the Cash Collateral on an interim basis upon (and only upon) the terms and conditions set forth in this Order.

3.      The Debtor's use of Cash Collateral is limited to payment of the authorized expenses pursuant to the budget for the Property attached hereto as Exhibit 1 (the "Budget") and for no other purpose without the prior written consent of SKW - B or further order of the Court.

4.      The Debtor shall immediately, and shall continue to, segregate, remit, and deposit all Cash Collateral in the Debtor's accounts, possession, custody, or control, and which the Debtor may receive in the future in a separate post-petition bank accounts established for the Debtor (the "Cash Collateral Accounts").  The Cash Collateral Accounts shall be in the name of the Debtor, but the Debtor shall be prohibited from withdrawing funds from the Cash Collateral Accounts except in strict compliance with the terms of this Order.

5.      The Debtor shall not commingle the Cash Collateral with the cash collateral of any other debtor, affiliate, guarantor, or any of the Debtor's members, managers, partners, shareholders, insiders, or any other person or entity.

6.      Unless extended further with the written consent of SKW - B, the authorization granted to the Debtor to use Cash Collateral under this Order shall terminate immediately upon the *earliest* to occur of the following (the date of such termination being the "Termination Date"): (i) the entry of an order dismissing the Bankruptcy Case, (ii) the entry of an order converting the Bankruptcy Case to cases under Chapter 7; (iii) the entry of an order appointing a trustee or an examiner with expanded powers with respect to the Debtor's estate or the Property; (iv) entry of an order reversing, vacating, or otherwise amending, supplementing, or modifying this Order, (v) entry of an order granting relief from the automatic stay to any creditor (other than SKW - B)

holding or asserting a lien in the Collateral, (vi) unless the Court orders otherwise, if Colliers, or a similar third party property manager acceptable to SKW - B or approved by the Court, is not engaged by the Debtor to oversee the management of the Property; or (vii) the Debtor's breach or failure to comply with any term or provision of this Order.  Notwithstanding any such termination, the rights and obligations of the Debtor and the rights, claims, liens, priorities, and other benefits and protections afforded to SKW - B under this Order shall remain unimpaired and unaffected by any such termination and shall survive any such termination.

7.      SKW – B shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to SKW – B with respect to proceeds, products, offspring or profits of any of the Collateral.

8.      Notwithstanding anything in Section 552 of the Bankruptcy Code to the contrary, SKW – B shall have, and is hereby granted, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected post-petition liens that are co-extensive with SKW - B's prepetition liens and security interests in: (i) all currently owned or hereafter acquired property and assets of the Debtor to the extent that such property and assets constitute SKW - B's Collateral under the Loan Documents, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereinafter acquired or arising; and (ii) all proceeds, products, and profits of the foregoing (the "Replacement Liens").  The Replacement Liens are being given to the extent of any decrease in value of the Collateral or Cash Collateral.  The Replacement Liens shall be effective and perfected as of the date of the entry of this Order and without the necessity of the execution by the Debtor of any security agreement, pledge agreement, financing statement

EXHIBIT A – Page 6

or any other documents and shall have the same validity, priority, and enforceability as SKW - B's liens and security interests in and on the Collateral on the Petition Date.

9.    To the extent the Replacement Liens granted to SKW – B in this Order do not provide SKW – B with adequate protection of its interests in the Cash Collateral, SKW – B is granted pursuant to sections 503(b) and 507(b) of the Bankruptcy Code an allowed administrative expense claim in the Bankruptcy Case ahead and senior to any and all other administrative expense claims in the Bankruptcy Case to the extent of any postpetition diminution in value (the "Adequate Protection Superpriority Claim").  The Adequate Protection Superpriority Claim will not be junior to any claims or administrative expenses.

10.    As partial adequate protection to SKW - B under this Order, the Debtor shall pay to SKW - B, on or before the later of September 1, 2021 or within two (2) business days of the transfer of funds to the DIP, a payment in an amount equal to interest at the then applicable non-default contract rate pursuant to the terms of the Loan Documents (the "Adequate Protection Payments") as reflected in the Budget.

11.    Additionally, on the first day of each month, beginning on September 1, 2021 and each month thereafter, the Debtor shall deposit into the escrow reserve funds held by SKW – B amounts equal to 1/12 of the estimated (a) annual real property taxes for the Property and (b) annual insurance premiums for property and general liability insurance policies for the Property as set forth in the Budget.

12.    As further adequate protection to SKW - B, absent prior written consent of SKW - B or further Order of the Court, the Debtor shall not revise or terminate (and, if necessary, shall extend the term of) its Management Agreement with Colliers concerning the management of the Property (the "Management Agreement").  Furthermore, the Debtor shall and is hereby authorized

to use Cash Collateral to compensate Colliers pursuant to the terms of the Management Agreement to the extent provided for in the Budget.

13.    The Loan Documents require, among other things, the Debtor to indemnify and hold SKW – B harmless from any and all loss, damage or expense including reasonable attorneys' fees and expenses incurred by SKW – B in connection with the protection of its rights or enforcement of remedies in the Bankruptcy Case and such amount shall be added to the Indebtedness.  SKW – B reserves the right to seek, as further adequate protection for any future consent to use Cash Collateral, the payment of its counsel's legal fees during the pendency of the Bankruptcy Case and prior to the payment of the Indebtedness.

14.    Notwithstanding anything to the contrary herein, this Interim Order is without prejudice to the rights of the Debtor, on behalf of its estate, or creditors' committee, if any, to challenge the type, nature, validity, perfection, priority, extent, enforceability or amount of the prepetition claims or liens of SKW – B in the Collateral (a "Challenge").  Any Challenge must be made on or before **September 30, 2021** (the "Challenge Period"), after which time any such Challenge shall be deemed finally and conclusively barred; provided, further, if one or more claims are timely made under this paragraph and properly filed in this Court in connection with the Bankruptcy Case, then except for such timely and properly filed claim(s), all other potential claims and causes of action of any kind or nature against SKW – B are hereby deemed forever waived and relinquished.

15.    No Cash Collateral may be used during the term of this Order to: (i) object to or contest in any manner, or raise any defenses to the validity, perfection, priority or enforceability of the SKW – B Claim, or the liens in favor of SKW - B securing the SKW – B  Allowed Claim; (ii) object to or contest in any manner, or raise any alleged defenses to the validity, perfection,

EXHIBIT A – Page 8

priority or enforceability of the SKW – B Allowed Claim or the liens in favor of SKW – B securing the Indebtedness; (iii) assert any claims or causes of action against SKW – B of any type, including, without limitation, any avoidance actions under Chapter 5 of the Bankruptcy Code, or any claim or cause of action related to the Loan Documents or otherwise; or (iv) prepare or prosecute any adversary proceeding in which SKW – B is named defendant.

16.     The Debtor shall make available to SKW – B, its counsel, and consultants, upon reasonable request, the Debtor's books and records and other financial information. The Debtor shall also deliver to SKW - B all customary reporting required to be delivered to SKW – B under the terms of the Loan Documents.

17.     No expenses of administration of the Bankruptcy Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principal of law, and the Debtor, its estate, and any trustee appointed in chapter 11 or 7 shall irrevocably waive and shall be prohibited from asserting any claim under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by SKW -B upon the Collateral.

18.     SKW – B shall have the right to "credit bid" the full amount of the Indebtedness in connection with any sale of all or any portion of the Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 restructuring plan subject to confirmation or any sale or disposition by a chapter 7 trustee under section 725 of the Bankruptcy Code. The Debtor and its estate hereby waive the right to seek to

limit or eliminate SKW – B's right to credit bid "for cause" under section 363(k) of the Bankruptcy Code.

19.     Each stipulation, admission, acknowledgement and agreement contained in this Interim Order shall be binding upon the Debtor, its estate and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes, and subject only to the Challenge Period and a timely assertion of a Challenge as set forth in paragraph 14 hereof, the Debtor and its estate are deemed to have irrevocably waived and relinquished any and all challenges to the nature, extent, validity and amount of SKW – B's liens and claims in respect of the Indebtedness.

20.     Nothing in this Order will be deemed or construed as an admission or waiver by SKW - B as to adequate protection, or any other issue in the Bankruptcy Case.  Nothing in this Order shall prejudice SKW – B's right to seek an order of this Court prohibiting the Debtor's use of Cash Collateral, relief from the automatic stay, or seek any other or supplemental relief that SKW - B may deem necessary and appropriate under the circumstances; and nothing in this Order prejudices the Debtor or any other party in interest's right to oppose such relief requested by SKW - B.

21.     The Debtor is authorized and directed to transfer $1,492,504.11, the total amount of approved budgeted expenses, from the PNC Cash Management Account to the DIP Account and to use those funds solely to pay the budgeted expenses. PNC is hereby authorized and directed to facilitate such transfer.

22.     The Debtor shall timely file all reports required by Bankruptcy Rule 2015 and Local Rule 2015 and shall timely pay all fees required by 28 U.S.C. § 1930.  This Order specifically

5637605.1  FJR 23081.20

authorizes Debtor to use Cash Collateral to pay these fees for each quarter (including any fraction thereof) until the case is converted or dismissed.

23.     To the extent permitted by applicable law, the provisions of this Final Order shall survive the entry of any order converting or dismissing the Bankruptcy Case or for the appointment of a chapter 11 trustee.

###

**WC 717 N Harwood Property, LLC**
**Budget through September 30, 2021**

| | |
|---|---:|
| **Opening Cash Balance\*\*** | $ 2,216,786.99 |
| | |
| *INCOME* | |
| **RENTAL INCOME** | |
| September Rent | 965,600.00 |
| *PROJECTED COLLECTIONS \** | *965,600.00* |
| | |
| *EXPENSES* | |
| *CONTRACT SERVICES* | |
| Colliers Property Mgmt | 98,619.52 |
| Thyssen Krupp | 100,000.00 |
| Promise Janitorial + Supplies | 94,380.00 |
| Allied Security | 97,953.24 |
| Bulbs | 2,400.00 |
| Parking Tower Expense | 6,657.40 |
| TeffNet | 6,397.88 |
| Fire Alarm Monitoring | 1,380.00 |
| Captivate Elevator | 3,982.52 |
| **TOTAL CONTRACT SERVICES** | **411,770.56** |
| | |
| *UTILITIES* | |
| Sewer / Waste Water (City of Dallas) | 8,487.48 |
| Utilities (Hudson Energy) | 154,000.00 |
| Trash Removal | 6,854.82 |
| **TOTAL UTILITIES** | **169,342.30** |
| | |
| *REPAIRS & MAINTENANCE* | |
| Elevator Repairs | 282,833.85 |
| Space Planning | 10,000.00 |
| **TOTAL R&M** | **292,833.85** |
| | |
| *GENERAL & ADMINISTRATIVE* | |
| Bank Charges | 400.00 |
| US Trustee Fee | 34,000.00 |
| **TOTAL G&A** | **34,400.00** |
| | |
| **TOTAL OPERATING EXPENSES** | **908,346.71** |
| *NET OPERATING INCOME/(LOSS)* | *57,253.29* |
| | |
| *DEBT SERVICE AND ESCROWS* | |
| Debt Service at Contract Rate | 417,305.40 |
| Tax Escrow | 147,000.00 |
| Insurance Escrow | 19,852.00 |
| **TOTAL  DEBT SERVICE AND ESCROWS** | **584,157.40** |
| | |
| *ENDING CASH BALANCE* | $ 1,689,882.88 |

Elevator Repairs — *subject to further written approval from Lender

**\*\* Lender is also in possession of certain cash reserves for which Debtor reserves all rights.**

EX B

SKW-B Acquisitions Seller J, LLC
c/o SKW Funding, LLC
Attn: Matt Contreras
134 West 25th Street
New York, New York 10001

Morritt Hook & Hamroff LLP
400 Garden City Plaza
Garden City, NY 11530
Attn: Brandi P. Klineberg

Colliers International Holdings (USA), Inc.
28158 Network Place
Chicago, IL 60673-1281

Universal Protection Service LP
P.O. Box 828854
Philadelphia, PA 19182-8854

Asurity Mortgage Group, LLC
717 North Harwood
Suite 1600
Dallas, TX 75201

TK Elevator Corporation
P.O. Box 3796
Carol Stream, IL 60132-3796

RTC Waterproofing & Glass, Inc.
1433 Crescent Drive
Carrollton, TX 75006

Hudson Energy Corp.
P.O. Box 731137
Dallas, TX 75373-1137

Captivate LLC
900 Chelmsford Street
Suite 3101
Lowell, MA 01851

City of Dallas Water Utilities
City Hall, 2D South
Dallas, TX 75277

Promise Total Services, Inc.
P.O. Box 29789
Dallas, TX 75229-9789

Mid America Metals
P.O. Box 860
Ozark, MO 65721-0860

McCall Parkhurst and Horton LLP
717 North Harwood
Suites 525 and 900
Dallas, TX 75201

4-L Engineering Company Inc.
420 N Dorothy Drive
Richardson, TX 75081

Nalco Company
P.O. Box 730005
Dallas, TX 75373-0005

Universal Thrive Technologies LLC
1815 E Wilshire Avenue
Suite 910
Santa Ana, CA 92705

Mitec
2445 Meadowbrook Parkway
Duluth, GA 30096

APS Building Services
P.O. Box 40447
Houston, TX 77240

Texas AirSystems LLC
6029 West Campus Circle Drive
Suite 100
Irving, TX 75063

TRI-TEX Construction, Inc.
403 International Parkway
Suite 500
Richardson, TX 75081

Downtown Dallas Inc.
Bank of America Plaza
Suite 7100
901 Main St.
Dallas, TX 75202

Allied Universal Technology Services
3440 Sojourn Drive
Suite 220
Carrolton, TX 75006

Office of the US Trustee
903 San Jacinto Boulevard
Room 230
Austin, TX 78701

Ross & Smith, PC
Attn: Frances A. Smith
700 N. Pearl Street, Suite 1610
Dallas, TX 75201

Ross & Smith, PC
Attn: Eric Soderlund
700 N. Pearl Street, Suite 1610
Dallas, TX 75201

Dallas County
Linebarger Goggan Blair & Sampson, LLP
c/o Elizabeth Weller
2777 N Stemmons Frwy Ste 1000
Dallas, Texas 75207