**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 08, 2021**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| WC 717 N HARWOOD PROPERTY, LLC, | § | Case No. 21-10630-tmd |
| | § | |
| Debtor. | § | |
| | § | |

**INTERIM ORDER AUTHORIZING DEBTOR'S (A) USE OF CASH COLLATERAL
PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND
GRANTING ADEQUATE PROTECTION, AND (B) SCHEDULING A
<u>FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001</u>**

This matter came before the Court pursuant to the Emergency Motion for Interim and Final Order Authorizing Cash Collateral, if any, Pursuant to 11 U.S.C. § 363 (the "<u>Motion</u>") filed by the above-captioned debtor ("<u>Debtor</u>"). Based on the Motion and the entire record before the Court,

**THE COURT HEREBY FINDS AND CONCLUDES** as follows: [1]

A.  On August 3, 2021 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11, thereby commencing this Chapter 11 case (the "<u>Bankruptcy Case</u>").

---

[1] Capitalized terms not otherwise defined in this Order shall have the same meaning as defined in the Motion.

2675698v7

B.   This Court has jurisdiction over the Bankruptcy Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.   The Debtor owns a multi-tenanted commercial office building located at 717 Harwood, Dallas, Texas (the "Property").

D.   The Debtor, as borrower, obtained a mortgage loan (the "Loan") from JPMorgan Chase Bank, N.A. ("Original Lender") pursuant to a loan agreement, dated as of August 9, 2019 (as amended from time to time, the "Loan Agreement").

E.   The Loan is evidenced by (i) Second Amended and Restated Promissory Note A-1 made by WC 717 N Harwood Property, LLC in favor of Original Lender in the principal amount of $55,277,377.00 (the "A Note") and (ii) Amended and Restated Promissory Note B-1 made by WC 717 N Harwood Property, LLC in favor of Original Lender in the principal amount of $20,000,000.00 (the "B Note" and together with A Note, the "Notes").

F.   The Loan is secured by, among other things, a certain *Deed of Trust, Assignment of Leases and Rents and Security Agreement*, dated as of August 9, 2019 (as amended on September 26, 2019, the "Deed of Trust" and together with the Notes, the "Loan Documents"). Pursuant to certain assignment agreements, SKW - B Acquisitions Seller J, LLC ("SKW – B") is the successor to the Original Lender under the Loan Documents.

G.   SKW – B asserts that as of the Petition Date, the Debtor owed SKW - B for monies loaned under the terms of the Loan Documents a principal amount of $74,231,017.32 plus accruing interest, fees, costs, and other amounts owing under the Loan Documents and less any escrow and reserve balances held by SKW – B (together, the "Indebtedness"). SKW – B asserts that default

2675698v7

interest under the Loan Documents continues to accrue postpetition at the rate set forth in the Loan Documents from the Petition Date until such time as the Indebtedness owing under the Loan Documents is paid in full.

H. Pursuant to the Deed of Trust, SKW – B asserts that it currently holds and maintains properly perfected first priority liens in certain real estate and improvements, including the Property. To perfect the liens granted to the Original Lender, the Deed of Trust was recorded with the County Clerk of Dallas, Texas.

I. Under the Deed of Trust, the Debtor granted to SKW – B (as assignee) a first priority lien in certain real estate and improvements, including the Property (the "Collateral"). The Collateral includes, among other things, all rents issued, profits, income, cash proceeds and other cash equivalents, and all cash and cash equivalent proceeds of the Property wherever located, constituting cash collateral of the Debtor within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral").

J. The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of the Property without the use of Cash Collateral. The ability of the Debtor to pay operating expenses is essential to the Debtor's continued viability. It is in the best interests of the Debtor's estate to have continued use of Cash Collateral for the operation of the Property.

K. The Debtor has requested that SKW - B consent to the interim and limited use of Cash Collateral. As evidenced by the undersigned counsel, SKW - B is willing to allow the Debtor to use Cash Collateral on an interim basis pursuant to the terms and conditions set forth in this Order. The terms and conditions of the proposed use of Cash Collateral pursuant to this Order are fair and reasonable, were negotiated by the parties in good faith at arm's length, and the parties

otherwise acted in good faith. SKW - B has not agreed to any further or other use of Cash Collateral for any other purpose except as set forth in this Order.

L. The Debtor has provided sufficient notice of the Court's initial hearing resulting in the entry of this Order. Sufficient and adequate notice under the circumstances of the Motion and the relief granted in this Order has been given.

M. Furthermore, to enable the Debtor to use the Cash Collateral, SKW – B hereby consents to the Debtor's transfer thereof comprising funds from its prepetition cash management account at PNC Bank, N.A. (Account No. ******8983) (the "PNC Cash Management Account") to a new debtor in possession account opened postpetition at Metropolitan Commercial Bank (Account No. ******6192) (the "DIP Account").

N. Based on the record before this Court, there is good cause for the Court to authorize the Debtor's interim use of Cash Collateral under the terms and conditions stated herein.

O. Each of the foregoing findings by the Court will be deemed a finding of fact if, and to the extent, that it contains factual findings and a conclusion of law if, and to the full extent, that it makes legal conclusions.

Based upon the foregoing findings and conclusions, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** as follows:

1. The Motion is GRANTED on an interim basis as provided in this Order.

2. Pursuant to Section 363(c) of the Bankruptcy Code, the Debtor shall be, and hereby is, authorized to use the Cash Collateral on an interim basis upon (and only upon) the terms and conditions set forth in this Order.

2675698v7

3. The Debtor's use of Cash Collateral is limited to payment of the authorized expenses pursuant to the budget for the Property attached hereto as <u>Exhibit 1</u> (the "<u>Budget</u>") and for no other purpose without the prior written consent of SKW - B or further order of the Court, with the exception of the fees required to be paid pursuant to 28 U.S.C. § 1930 as provided in paragraph 22 hereof.

4. The Debtor shall immediately, and shall continue to, segregate, remit, and deposit all Cash Collateral in the Debtor's accounts, possession, custody, or control, and which the Debtor may receive in the future in a separate post-petition bank accounts established for the Debtor (the "<u>Cash Collateral Accounts</u>"). The Cash Collateral Accounts shall be in the name of the Debtor, but the Debtor shall be prohibited from withdrawing funds from the Cash Collateral Accounts except in strict compliance with the terms of this Order.

5. The Debtor shall not commingle the Cash Collateral with the cash collateral of any other debtor, affiliate, guarantor, or any of the Debtor's members, managers, partners, shareholders, insiders, or any other person or entity.

6. Unless extended further with the written consent of SKW – B or order of the Court, the authorization granted to the Debtor to use Cash Collateral under this Order shall terminate immediately upon the *earliest* to occur of the following (the date of such termination being the "<u>Termination Date</u>"): (i) the entry of an order dismissing the Bankruptcy Case, (ii) the entry of an order converting the Bankruptcy Case to cases under Chapter 7; (iii) the entry of an order appointing a trustee or an examiner with expanded powers with respect to the Debtor's estate or the Property; (iv) entry of an order reversing, vacating, or otherwise amending, supplementing, or modifying this Order, (v) entry of an order granting relief from the automatic stay to any creditor (other than SKW - B) holding or asserting a lien in the Collateral, (vi) unless the Court orders

2675698v7

otherwise, if Colliers, or a similar third party property manager acceptable to SKW - B or approved by the Court, is not engaged by the Debtor to oversee the management of the Property; or (vii) the Debtor's breach or failure to comply with any term or provision of this Order, except the requirement to pay the fees required to be paid pursuant to 28 U.S.C. § 1930. Notwithstanding any such termination, the rights and obligations of the Debtor and the rights, claims, liens, priorities, and other benefits and protections afforded to SKW - B under this Order shall remain unimpaired and unaffected by any such termination and shall survive any such termination.

7. SKW – B shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to SKW – B with respect to proceeds, products, offspring or profits of any of the Collateral.

8. Notwithstanding anything in Section 552 of the Bankruptcy Code to the contrary, SKW – B shall have, and is hereby granted, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected post-petition liens that are co-extensive with SKW - B's prepetition liens and security interests in: (i) all currently owned or hereafter acquired property and assets of the Debtor to the extent that such property and assets constitute SKW - B's Collateral under the Loan Documents, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereinafter acquired or arising; and (ii) all proceeds, products, and profits of the foregoing (the "Replacement Liens"). The Replacement Liens are being given to the extent of any decrease in value of the Collateral or Cash Collateral. The Replacement Liens shall be effective and perfected as of the date of the entry of this Order and without the necessity of the execution by the Debtor of any security agreement, pledge agreement, financing statement

or any other documents and shall have the same validity, priority, and enforceability as SKW - B's liens and security interests in and on the Collateral on the Petition Date.

9. To the extent the Replacement Liens granted to SKW – B in this Order do not provide SKW – B with adequate protection of its interests in the Cash Collateral, SKW – B is granted pursuant to sections 503(b) and 507(b) of the Bankruptcy Code an allowed administrative expense claim in the Bankruptcy Case ahead and senior to any and all other administrative expense claims in the Bankruptcy Case to the extent of any postpetition diminution in value (the "<u>Adequate Protection Superpriority Claim</u>"). The Adequate Protection Superpriority Claim will not be junior to any claims or administrative expenses.

10. As partial adequate protection to SKW - B under this Order, the Debtor shall pay to SKW - B, on or before the later of September 1, 2021 or within two (2) business days of the transfer of funds to the DIP Account, and on the first of each month thereafter, a payment in an amount equal to interest at the then applicable non-default contract rate pursuant to the terms of the Loan Documents (the "<u>Adequate Protection Payments</u>") as reflected in the Budget.

11. Additionally, on the first day of each month, beginning on September 1, 2021 or within two (2) business days of the entry of this Order, and on the first of each month thereafter, the Debtor shall deposit into the escrow reserve funds held by SKW – B amounts equal to 1/12 of the estimated (a) annual real property taxes for the Property and (b) annual insurance premiums for property and general liability insurance policies for the Property as set forth in the Budget.

12. As further adequate protection to SKW - B, absent prior written consent of SKW - B or further Order of the Court, the Debtor shall not revise or terminate (and, if necessary, shall extend the term of) its Management Agreement with Colliers concerning the management of the Property (the "<u>Management Agreement</u>"). Furthermore, the Debtor shall and is hereby authorized

to use Cash Collateral to compensate Colliers pursuant to the terms of the Management Agreement to the extent provided for in the Budget.

14. SKW – B reserves the right to seek, as further adequate protection for any future consent to use Cash Collateral, the payment of its counsel's legal fees during the pendency of the Bankruptcy Case and prior to the payment of the Indebtedness.

14. Notwithstanding anything to the contrary herein, this Interim Order is without prejudice to the rights of the Debtor, on behalf of its estate, or creditors' committee, if any, to challenge the type, nature, validity, perfection, priority, extent, enforceability or amount of the prepetition claims or liens of SKW – B in the Collateral (a "Challenge"). Any Challenge must be made on or before **October 30, 2021** (the "Challenge Period"), after which time any such Challenge shall be deemed finally and conclusively barred; provided, further, if one or more claims are timely made under this paragraph and properly filed in this Court in connection with the Bankruptcy Case, then except for such timely and properly filed claim(s), all other potential claims and causes of action of any kind or nature against SKW – B are hereby deemed forever waived and relinquished.

15. No Cash Collateral may be used during the term of this Order to: (i) object to or contest in any manner, or raise any defenses to the validity, perfection, priority or enforceability of the SKW – B Claim, or the liens in favor of SKW - B securing the SKW – B Allowed Claim; (ii) object to or contest in any manner, or raise any alleged defenses to the validity, perfection, priority or enforceability of the SKW – B Allowed Claim or the liens in favor of SKW – B securing the Indebtedness; (iii) assert any claims or causes of action against SKW – B of any type, including, without limitation, any avoidance actions under Chapter 5 of the Bankruptcy Code, or any claim

8

2675698v7

or cause of action related to the Loan Documents or otherwise; or (iv) prepare or prosecute any adversary proceeding in which SKW – B is named defendant.

16. The Debtor shall make available to SKW – B, its counsel, and consultants, upon reasonable request, the Debtor's books and records and other financial information. The Debtor shall also deliver to SKW - B all customary reporting required to be delivered to SKW – B under the terms of the Loan Documents.

17. SKW – B shall have the right to "credit bid" the full amount of the Indebtedness in connection with any sale of all or any portion of the Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 restructuring plan subject to confirmation or any sale or disposition by a chapter 7 trustee under section 725 of the Bankruptcy Code. The Debtor and its estate hereby waive the right to seek to limit or eliminate SKW – B's right to credit bid "for cause" under section 363(k) of the Bankruptcy Code.

18. Each stipulation, admission, acknowledgement and agreement contained in this Interim Order shall be binding upon the Debtor, its estate and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes, and subject only to the Challenge Period and a timely assertion of a Challenge as set forth in paragraph 14 hereof, the Debtor and its estate are deemed to have irrevocably waived and relinquished any and all challenges to the nature, extent, validity and amount of SKW – B's liens and claims in respect of the Indebtedness.

19. Nothing in this Order will be deemed or construed as an admission or waiver by SKW - B as to adequate protection, or any other issue in the Bankruptcy Case. Nothing in this Order shall prejudice SKW – B's right to seek an order of this Court prohibiting the Debtor's use

of Cash Collateral, relief from the automatic stay, or seek any other or supplemental relief that SKW - B may deem necessary and appropriate under the circumstances; and nothing in this Order prejudices the Debtor or any other party in interest's right to oppose such relief requested by SKW - B.

20. Notwithstanding anything contained herein or in the Budget to the contrary, the Debtor is hereby authorized to use Cash Collateral to pay from the PNC Cash Management Account $94,283,02 to Promise Total Services, Inc. in respect of janitorial services.

21. The Debtor is authorized and directed to transfer $1,492,504.11, the total amount of approved budgeted expenses, from the PNC Cash Management Account to the DIP Account and to use those funds solely to pay the budgeted expenses. PNC is hereby authorized and directed to facilitate such transfer.

22. The Debtor shall timely file all reports required by Bankruptcy Rule 2015 and Local Rule 2015 and shall timely pay all fees required by 28 U.S.C. § 1930. This Order specifically authorizes Debtor to use Cash Collateral to pay these fees for each quarter (including any fraction thereof) until the case is converted or dismissed.

23. To the extent permitted by applicable law, and subject to further order of the Court, the provisions of this Order shall survive the entry of any order converting or dismissing the Bankruptcy Case or for the appointment of a chapter 11 trustee.

###

**WC 717 N Harwood Property, LLC**
**Budget through September 30, 2021**

| | |
|---|---:|
| **Opening Cash Balance**** | $ 2,216,786.99 |
| | |
| **INCOME** | |
|   RENTAL INCOME | |
| September Rent | 965,600.00 |
| **PROJECTED COLLECTIONS *** | **965,600.00** |
| | |
| **EXPENSES** | |
|   CONTRACT SERVICES | |
|     Colliers Property Mgmt | 98,619.52 |
|     Thyssen Krupp | 100,000.00 |
|     Promise Janitorial + Supplies | 94,380.00 |
|     Allied Security | 97,953.24 |
|     Bulbs | 2,400.00 |
|     Parking Tower Expense | 6,657.40 |
|     TeffNet | 6,397.88 |
|     Fire Alarm Monitoring | 1,380.00 |
|     Captivate Elevator | 3,982.52 |
|   **TOTAL CONTRACT SERVICES** | **411,770.56** |
| | |
|   UTILITIES | |
|     Sewer / Waste Water (City of Dallas) | 8,487.48 |
|     Utilities (Hudson Energy) | 154,000.00 |
|     Trash Removal | 6,854.82 |
|   **TOTAL UTILITIES** | **169,342.30** |
| | |
|   REPAIRS & MAINTENANCE | |
|     Elevator Repairs | 282,833.85 *subject to further written approval from Lender |
|     Space Planning | 10,000.00 |
|   **TOTAL R&M** | **292,833.85** |
| | |
|   GENERAL & ADMINISTRATIVE | |
|     Bank Charges | 400.00 |
|     US Trustee Fee | 34,000.00 |
|   **TOTAL G&A** | **34,400.00** |
| | |
| **TOTAL OPERATING EXPENSES** | **908,346.71** |
| **NET OPERATING INCOME/(LOSS)** | **57,253.29** |
| | |
| **DEBT SERVICE AND ESCROWS** | |
|   Debt Service at Contract Rate | 417,305.40 |
|   Tax Escrow | 147,000.00 |
|   Insurance Escrow | 19,852.00 |
| **TOTAL DEBT SERVICE AND ESCROWS** | **584,157.40** |
| | |
| **ENDING CASH BALANCE** | $ **1,689,882.88** |

**** Lender is also in possession of certain cash reserves for which Debtor reserves all rights.**

EX 1