

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 22, 2021.**

**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| WC 717 N HARWOOD PROPERTY, LLC, | § | Case No. 21-10630-tmd |
| | § | |
| Debtor. | § | |
| | § | |

### AGREED ORDER GRANTING SKW – B HARWOOD SELLER J, LLC'S MOTION FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY AND GRANTING RELATED RELIEF

On October 29, 2021, SKW – B Harwood Seller, J, LLC ("SKW – B") filed in the above-captioned chapter 11 case (the "Bankruptcy Case") a motion [ECF Dkt. 61] (the "Motion")[1] for an order pursuant to 11 U.S.C. § 362(d)(1) for relief from the automatic stay to permit SKW – B to exercise certain rights and remedies pursuant to the Loan Documents and applicable state law against the above-captioned debtor (the "Debtor") and the real property owned by the Debtor located at 717 Harwood, Dallas, Texas (the "Property"). The Court, having considered the Motion, and any responses thereto, and based upon the agreements of the parties hereto as evidenced by the signatures of their respective counsel below, finds that the following Order should be entered.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

2793962v12

**ACCORDINGLY, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED**

that

1.     The Motion is hereby granted to the extent set forth herein.

2.     The Debtor shall deliver the executed Deed In Lieu of Foreclosure in the form annexed to this Order as **Exhibit A** together with any additional instruments required to convey good title to SKW – B (together, the "DIL") to counsel for SKW – B, Moritt Hock Hamroff & LLP, 400 Garden City Plaza, Garden City, NY 11530, Attn: Theresa A. Driscoll, on or before 5:00 p.m. (Eastern Time) on December 31, 2021 (the "DIL Deadline"), to be held in escrow in accordance with this Order; provided that, in the event that the Debtor does not deliver the DIL to SKW – B in accordance with this Order on or before the DIL Deadline, time being of the essence, the automatic stay imposed by operation of section 362(a) of the Bankruptcy Code shall automatically lift and terminate as to SKW – B without further order of this Court or notice to any party, to permit  SKW – B to exercise its rights and remedies under the Loan Documents and applicable state law, including without limitation:  (i) advertising for a non-judicial foreclosure sale of the Property; (ii) selling, and foreclosing on, the Property; and (iii) seeking and obtaining confirmation of any such foreclosure sale; and the Debtor hereby waives, relinquishes, and abandons any objection or right to be heard with respect to any such foreclosure in this or any other court.

3.     The Debtor shall pay the Payoff Amount (as defined herein) in full to SKW - B by wire transfer, in good funds, so as to be received on or before 11:59 p.m. Eastern Time on April 15, 2022 (the "Payoff Deadline"). With respect to the payment of the Payoff Amount owed SKW – B through any sale or refinancing transaction involving the Property, SKW – B shall provide reasonable and customary cooperation, including providing standard property lien releases, escrow

2793962v12

instructions, and other customary documentation, to any third party title company involved in the closing of the sale or refinancing transaction.

4.      SKW – B has an allowed claim in the amount of not less than $78,630,340.46, plus such additional default interest, fees, costs, and other any other amounts outstanding under the Loan Documents and secured by the Property that accrue from November 1, 2021 through the date that SKW – B is paid in full (the "Payoff Amount").

5.      The payoff statement annexed to this Order as **Exhibit B** showing the calculation of the Payoff Amount as of November 1, 2021 is hereby approved, without prejudice to the allowance of additional interest, fees, costs, and other expenses accrued thereafter, which shall be added to the Payoff Amount.  Default interest shall accrue and be added to the Payoff Amount in the per diem amount of $24,220.04 through the Payoff Deadline.

6.      At any time prior to Payoff Deadline, SKW – B shall provide a current calculation of the Payoff Amount and wire transfer instructions to the Debtor upon three (3) business days prior written request made to Theresa A. Driscoll, Esq., which request may be made by email.

7.      If the entire Payoff Amount is not paid by the Debtor to SKW – B by the Payoff Deadline, the Debtor shall, by no later than 12:00 noon Eastern Time on April 18, 2022 (the "Replacement DIL Deadline"), deliver a replacement DIL, in the form annexed to this Order as **Exhibit A,** dated as of no earlier than April 15, 2022 ("Replacement DIL"), to counsel for SKW – B, Moritt Hock Hamroff & LLP, 400 Garden City Plaza, Garden City, NY 11530, Attn: Theresa A. Driscoll.

8.      If the entire Payoff Amount is not paid by the Debtor to SKW – B by the Payoff Deadline, the automatic stay imposed by operation of section 362(a) of the Bankruptcy Code shall automatically terminate as to SKW – B without further order of this Court or notice to any party

and SKW – B is hereby authorized to either: (a) record the DIL immediately without further order of the Court or notice to any party, (b) record the Replacement DIL as and when delivered, or (c) (i) advertise for a non-judicial foreclosure sale of the Property, (ii) sell, and foreclose on, the Property and (iii) seek and obtain confirmation of any such foreclosure sale and the Debtor hereby waives, relinquishes, and abandons any objection or right to be heard with respect to any such foreclosure in this or any other court.

9.     The Debtor's execution and delivery the DIL and Replacement DIL to SKW - B is voluntary and free from any coercion and duress as such instruments are being delivered as part of a settlement of the Motion as set forth herein.

10.     If the entire Payoff Amount is not paid by the Debtor to SKW – B by the Payoff Deadline, SKW – B shall be authorized to record the DIL and/or the Replacement DIL and, in such event, SKW – B's recordation of the DIL and/or Replacement DIL shall be in full and final satisfaction of the Payoff Amount. Because the DIL and Replacement DIL is being delivered in full satisfaction of the Payoff Amount, there is no deficiency claim. Additionally, should SKW – B exercise its state-law foreclosure rights with respect to the Property as described in paragraphs 8 and 13, and provided that the Debtor has delivered the Replacement DIL by the Replacement DIL Deadline, SKW – B shall have no deficiency claim regardless of the amount SKW – B or its successors recover or are deemed to recover from that foreclosure. For the avoidance of doubt, in the event the Debtor does not deliver the Replacement DIL to SKW – B by the Replacement DIL Deadline and SKW – B elects to exercise its state-law foreclosure rights with respect to the Property as described in paragraphs 8 and 13 hereof, SKW – B shall have the right to assert a deficiency claim against any non-Debtor obligor under the Loan Documents.

2793962v12

11.     As of November 1, 2021, SKW – B was holding reserves totaling $4,817,634.07 (the "Lender Reserves")[2] funded under the Loan Documents for taxes and insurance, as well as for expenditures necessary for the improvement of, and repairs to, the Property.     In the event of a transaction providing for the payment of the Payoff Amount in full to SKW – B by the Payoff Deadline, SKW – B shall apply any remaining Lender Reserves as of the date of such payment as part of the Payoff Amount.  In the event the Property is conveyed to SKW – B through a DIL or Replacement DIL, SKW – B shall be entitled to keep that portion of the Lender Reserves allocated for insurance and taxes up to the amount of the Property's accrued tax and insurance obligations and, subject to the Debtor's full compliance with the terms of this Order including without limitation the delivery of the Replacement DIL by the Replacement DIL Deadline, SKW- B shall release the balance of the Lender Reserves to the Debtor, except that with the exception of the Debtor's timely delivery of the Replacement DIL as provided in paragraph 7 above, upon written notice by SKW – B to the Debtor (which notice may be provided by email), the Debtor shall have ten (10) days to cure any failure to meet any condition or requirement of this Order.  For the avoidance of doubt, SKW – B's obligation in this paragraph 11 to release the balance of the Lender Reserves (net of accrued tax and insurance obligations) to the Debtor is contingent upon and subject to the Debtor's delivery of the Replacement DIL by the Replacement DIL Deadline and there being no other defaults by the Debtor that have not been timely cured under the terms hereof. In the event the Property is conveyed to a third party prior to the Payoff Deadline, SKW – B shall release the Lender Reserves to the Debtor or, at the Debtor's request, shall apply the Lender

---

[2] The Debtor consents to SKW – B's use of the Lender Reserves for the payment of taxes and insurance on the Property that will become due in January 2022 and, therefore, the balance of the Lender Reserves as of the Payoff Deadline is anticipated to be less than the balance on November 1, 2021. Thus, all references to Lender Reserves in paragraph 11 shall mean the total reserves held by SKW – B at the time of the Payoff Deadline (or earlier payoff).

2793962v12

Reserves as part of the Payoff Amount subject to the Debtor paying to SKW – B the Payoff Amount in full.

12. If the Debtor has paid the entire Payoff Amount to SKW – B by the Payoff Deadline, the Debtor shall have no obligation hereunder to deliver the Replacement DIL and SKW – B is not authorized to record the DIL and shall immediately return the DIL to counsel for the Debtor, Mark Ralston, Fishman Jackson Ronquillo PLLC, 13155 Noel Road, Suite 700, Dallas, Texas 752240.

13. Through and including the Debtor's payment of the Payoff Amount in full to SKW - B, interest shall continue to accrue at the default rate provided under the Loan Documents and the Debtor shall continue to make all required adequate protection payments comprised of monthly interest at the non-default contract rate set forth in the Loan Documents and fund all tax and insurance escrow accounts as required by that certain Final Order Authorizing Debtor's Use of Cash Collateral [ECF Dkt. 54] (the "Final Cash Collateral Order"). The Final Cash Collateral Order, and the Debtor's admissions, acknowledgements and obligations thereunder, shall remain in full force and effect. This Order is without prejudice to SKW – B's right to seek an earlier termination of the automatic stay prior to the Payoff Deadline based upon the Debtor's breach of its obligations under this paragraph 13 or any of its obligations under the Final Cash Collateral Order. Upon a breach of any obligation contained in this paragraph 13 or the Final Cash Collateral Order, the Payoff Deadline herein shall be accelerated upon SKW – B's filing of a notice of default in the Bankruptcy Case ("Default Notice"). Upon such filing, the Debtor shall have five (5) days to cure such default and, in the absence of a cure, the Payoff Deadline shall be deemed accelerated to the date that is six (6) days after the date of the Default Notice (the "Accelerated Payoff Date"). If the Payoff Amount is not paid by the Accelerated Payoff Date, the automatic stay imposed by

operation of section 362(a) of the Bankruptcy Code shall automatically terminate as to SKW – B without further order of this Court or notice to any party and SKW – B is hereby authorized to either: (a) record the DIL immediately without further order of the Court or notice to any party, (b) record the Replacement DIL as and when delivered, or (c) (i) advertise for a non-judicial foreclosure sale of the Property, (ii) sell, and foreclose on, the Property and (iii) seek and obtain confirmation of any such foreclosure sale and the Debtor hereby waives, relinquishes, and abandons any objection or right to be heard with respect to any such foreclosure in this or any other court.

14. The Debtor waives any right to seek, in this or any other Court, (i) an extension or modification of the DIL Deadline or the Payoff Deadline or any other term of this Order or the Final Cash Collateral Order (without SKW – B's consent), (ii) a modification of the Payoff Amount, including SKW – B's entitlement to default interest under the Loan Documents, whether under a chapter 11 plan of reorganization or otherwise, or (iii) to stay, enjoin, restrain, challenge, void, or otherwise delay or interfere with any action permitted to be taken by SKW – B by this Order.

15. The Debtor's Disclosure Statement for Plan of Reorganization [ECF Dkt. 65] and the proposed Debtor's Plan of Reorganization Plan [ECF Dkt. 66] are hereby withdrawn and any hearings related thereto are cancelled. All pending discovery related to the Motion is hereby abated.

16. Neither the Debtor nor its estate hold any valid or enforceable "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights of any kind against, and hereby forever waive and release any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights against SKW – B, and its

2793962v12

respective officers, directors, equity holders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives (including their respective officers, directors, equity holders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents and other representatives) (collectively, the "Releasees"), whether arising at law or in equity, including any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law arising in connection with, arising under, or related to the Loan Documents, the Bankruptcy Case, the indebtedness comprising the Payoff Amount, the DIL or the Replacement DIL (the "Released Claims").

17.    By no later than ten (10) days from the date of the entry of this Order, the Debtor, by and through its affiliates, shall dismiss or withdraw with prejudice the action pending in Dallas County District Court under caption *WC 717 N Harwood Property, LLC and World Class Acquisitions, LLC v. SKW Funding, LLC and SKW – B Acquisitions Seller J, LLC*, under Case No. DC-21-08566.

18.    The Debtor hereby confirms that (a) the sole member and 100% owner of the Debtor is WC 717 N Harwood Mezz, LLC and has not pledged or transferred such equity interest to any person, (b) Natin Paul is the managing member of WC 717 N Harwood Mezz, LLC and (c) there currently is no mezzanine financing outstanding with respect to WC 717 N Harwood Mezz, LLC and in connection this Property.

19.    Prior to the Payoff Deadline, SKW – B shall provide the Debtor with a current title report reflecting all liens on the Property. The Debtor is hereby authorized and directed to use

8

cash collateral to fund an escrow for the discharge of such liens on the Property (other than the liens of SKW – B). If the Payoff Amount is not paid by the Payoff Deadline, the Debtor shall, by no later than April 30, 2022, use the funds in escrow to satisfy all liens (other than those of SKW – B) on the Property and shall provide SKW – B with copies of the recorded lien releases. Alternatively, SKW – B shall be authorized to use the Lender Reserves to satisfy and discharge liens as of the Payoff Deadline.

20.    Until the occurrence of the Payoff Deadline and unless otherwise ordered by the Court, the Debtor is required to continue to file monthly operating reports in the Bankruptcy Case.

21.    This Order shall survive any conversion of this case to a case under chapter 7 of the Bankruptcy Code and shall continue in full force and effect and be binding on any chapter 7 trustee or successor to the Debtor.

22.    This Order is effective and enforceable immediately upon entry, and the stay provided by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure shall not apply to this Order.

23.    This Court shall retain exclusive jurisdiction to resolve any issue or dispute regarding the terms of this Order.

###

AGREED:

**MORITT HOCK & HAMROFF LLP**

/s/ Theresa A. Driscoll
Theresa A. Driscoll
400 Garden City Plaza
Garden City, NY 11530
(516) 873-2000
tdriscoll@moritthock.com

*Attorneys for SKW – B Harwood Seller J, LLC*

9

- and -

**FISHMAN, JACKSON, RONQUILLO PLLC**

/s/ Mark H. Ralston
 Mark H. Ralston
13155 Noel Road, Suite 700
Dallas, Texas 75240
(972) 419 - 5544
mralston@fjrpllc.com

*Attorneys for WC 717 N Harwood Property, LLC*

10

**EXHIBIT A**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

SPECIAL WARRANTY DEED

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF DALLAS | § | |

That WC 717 HARWOOD PROPERTY, LLC, a Delaware limited liability company (hereinafter referred to as "Grantor"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, has GRANTED, SOLD AND CONVEYED and by these presents does GRANT, SELL AND CONVEY unto SKW – B HARWOOD SELLER J, LLC, a Delaware limited liability company (hereinafter referred to as "Grantee"), whose address is 134 West 25th Street, 5th Floor, New York, New York 10001, the following described property, to-wit:

> Being that certain real property located at 717 N. Harwood, Dallas, Dallas County, Texas, and being more particularly described by metes and bounds in Exhibit "A" attached hereto and fully made a part hereof by reference for all purposes, together with all improvements thereon and all rights, privileges, liberties, tenements, hereditaments and appurtenances in anywise appertaining or belonging thereto, and all of Grantor's right, title and interest in and to all streets, alleys, roads, rights-of-way and other public ways adjacent thereto, and any strips and gores adjacent thereto, sewer rights, water, water courses, water rights and powers, air rights and development right and rights to oil, gas, minerals, coal and other substances of any kind and character (all of said property and interests being collectively referred to herein as the "Property").

**TO HAVE AND TO HOLD** the above-described Property, together with any and all rights and appurtenances thereto in anywise belonging to Grantor, unto Grantee and its successors and assigns forever; and Grantor does hereby bind itself and its successors and assigns to WARRANT AND FOREVER DEFEND all and singular the said Property unto the said Grantee, and its successors and assigns, against every person whomsoever lawfully claiming the same or any part thereof by, through or under Grantor, but not otherwise.

**THIS DEED IS SUBJECT** to that certain Deed of Trust, Assignment of Leases and Rents and Security Agreement dated as of August 9, 2019 (as amended, the "Deed of Trust"), executed by Grantor, as borrower, to and in favor of Michael Elkins, as trustee for the benefit of JPMorgan Chase Bank, National Association, as lender ("Original Lender"), recorded under Clerk's File Numbers 201900211212 and 201900261493 in the Official Records of Dallas County, Texas, the

lien and provisions of which Deed of Trust were subsequently assigned by Original Lender to SKW – B Acquisitions Seller J, LLC ("SKW – B Acquisitions") pursuant to that certain Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement dated as of March 5, 2021, executed by Original Lender to and in favor of SKW – B Acquisitions, recorded under Clerk's File Number 202100178147 in the Official Records of Dallas County, Texas, the lien and provisions of which Deed of Trust were subsequently assigned by SKW – B Acquisitions pursuant to that certain Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement dated as of September 30, 2021, executed by SKW – B Acquisitions to and in favor of Grantee, recorded under Clerk's File Number 202100299519 in the Official Records of Dallas County, Texas.  The Deed of Trust remains in full force and effect with regard to the Property, and Grantee's ownership of the Property is subject to the Deed of Trust in all respects.

**THIS CONVEYANCE IS ALSO SUBJECT** to those matters and encumbrances more particularly described on Exhibit "B" attached hereto and fully made a part hereof by reference for all purposes, but only to the extent that they are valid and subsisting and affect the Property.

IN WITNESS WHEREOF, Grantor has executed this Special Warranty Deed on this \_\_\_\_\_ day of _____, 2021.

GRANTOR:

WC 717 N HARWOOD PROPERTY, LLC,
a Delaware limited liability company

By: WC 717 N HARWOOD MEZZ, LLC,
    a Delaware limited liability company,
    its Manager

      By: _____
           Natin Paul
           President

STATE OF TEXAS      §
                      §
COUNTY OF _____  §

This instrument was acknowledged before me on the \_\_\_\_\_ day of _____, 2021, by Natin Paul, President of WC 717 N HARWOOD MEZZ, LLC, a Delaware limited liability company as manager of 717 N HARWOOD PROPERTY, LLC, a Delaware limited liability company, on behalf of said limited liability company, for the purposes and consideration therein expressed.

_____
Notary Public, State of Texas

After Recording, Return to:
Moritt Hock & Hamroff LLP
400 Garden City Plaza
Garden City, New York 11530
Attn: Theresa A. Driscoll, Esq.

## EXHIBIT "A"

## LEGAL DESCRIPTION

TRACT 1: (Fee Simple)

BEING a 42,200 square feet or a 0.9688 acre tract of land situated in the J. Grisgby Survey, Abstract No. 495, City of Dallas, Dallas County, Texas, said tract being part of City Block 1/243, and said tract conveyed to Dallas PT 717 North Harwood Street Office Limited Partnership by deed recorded in Volume 2001157, Page 4818, Deed Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a set "x" cut on concrete pavement for a corner at the East corner of a right-of-way corner clip at the intersection of the Southwest line of Harwood Street (a 60 foot right-of-way) with the Southeast line of San Jacinto Street (a variable width right-of-way);

THENCE South 44 degrees 48 minutes 00 seconds East, with the Southwest line of Harwood Street, a distance of 263.47 feet to a found PK nail for a corner at the intersection of the Southwest line of Harwood Street with the Northwest line of Wenchell Lane (a 16 foot right-of-way);

THENCE South 44 degrees 49 minutes 57 seconds West, with the Northwest line of Wenchell Lane, a distance of 154.00 feet to a found PK nail for a corner, said point being the East corner of a tract of land conveyed to Cotton Lot L.P. by deed recorded in Volume 98050, Page 7896, Deed Records of Dallas County, Texas;

THENCE North 44 degrees 47 minutes 30 seconds West, departing the Northwest line of Wenchell Lane and with the common line of the herein described tract and the said Cotton Lot L.P. tract, a distance of 275.50 feet to a found "x" cut on concrete pavement for a corner in the Southeast line of San Jacinto Street;

THENCE North 45 degrees 00 minutes 00 seconds East, with the Southeast line of San Jacinto Street, a distance of 105.84 feet to a set "x" cut on concrete pavement at the beginning of a non-tangent curve to the left with a central angle of 04 degrees 00 minutes 40 seconds, a radius of 622.11 feet, a chord bearing of North 53 degrees 01 minutes 23 seconds East, and a chord distance of 43.54 feet;

THENCE Northeasterly, continuing with the Southeast line of San Jacinto Street and along said curve, an arc distance of 43.55 feet to a set "x" cut on concrete pavement for a corner at the West corner of the above said right-of-way corner clip;

THENCE South 87 degrees 00 minutes 28 seconds East, with the said right-of-way corner clip, a distance of 7.40 feet to the Point of Beginning.

TRACT 2: (Non-Exclusive Easement)

BEING a 40,417 square feet or a .9278 acre tract of land situated in the J. Grisgby Survey, Abstract No. 495, City of Dallas, Dallas County, Texas, said tract being part of City Block 246, and said easement rights conveyed to Dallas PT 717 North Harwood Street Office Limited Partnership by deed recorded in Volume 2001157, Page 4818, Deed Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a set 1/2 inch iron rod for a corner at the South corner of a right-of-way corner clip at the intersection of the Northeast line of Harwood Street (a 60 foot right-of-way) with the Southeast line of San Jacinto Street (a variable width right-of-way);

THENCE North 00 degrees 06 minutes 00 seconds East, with the said right-of-way corner clip, a distance of 14.17 feet to a set "x" cut on concrete pavement for a corner in the Southeast line of San Jacinto Street, said point being the North corner of the said right-of-way corner clip;

THENCE North 45 degrees 00 minutes 00 seconds East, with the Southeast line of San Jacinto Street, a distance of 142.91 feet to a set 1/2 inch iron rod for a corner;

THENCE South 44 degrees 51 minutes 00 seconds East, departing the Southeast line of San Jacinto Street, a distance of 264.67 feet to a set 1/2 inch iron rod for a corner;

THENCE South 45 degrees 10 minutes 20 seconds West, a distance of 153.14 feet to a found "x" cut on concrete pavement for a corner in the Northeast line of Harwood Street;

THENCE North 44 degrees 48 minutes 00 seconds West, with the Northeast line of Harwood Street, a distance of 254.21 feet to the Point of Beginning.

TRACT 3: (Non-Exclusive Easement)

BEING all that certain air space above the vertical clearance height of approximately 23.00 feet over the crown of a portion of the 1200 square foot parcel of Harwood Street quit claimed and abandoned by the City of Dallas, pursuant to Ordinance No. 16680 passed by City Council of the City of Dallas, on September 10, 1980, said portion of the aforesaid 1200 square foot parcel of Harwood Street being more particularly described as follows:

BEGINNING at a point in the center line of Harwood Street (a 60 foot right-of-way), said point being North 43 degrees 47 minutes 49 seconds East, a distance of 30.01 feet and North 44 degrees 48 minutes 00 seconds West, a distance of 71.60 feet from a found PK nail at the intersection of the Southwest line of Harwood Street with the Northwest line of Wenchell Lane (a 16 foot right-of-way);

THENCE North 44 degrees 48 minutes 00 seconds West, with the center line of Harwood Street, a distance of 20.00 feet to a point for a corner;

THENCE North 43 degrees 47 minutes 49 seconds East, departing the center line of Harwood Street, a distance of 30.01 feet to a found "x" cut on concrete pavement point for a corner in the Northeast line of Harwood Street;

THENCE South 44 degrees 48 minutes 00 seconds East, with the Northeast line of Harwood Street, a distance of 20.00 feet to a found "x" cut on concrete pavement for a corner;

THENCE South 43 degrees 47 minutes 49 seconds West, departing the Northeast line of Harwood Street, a distance of 30.01 feet to the Point of Beginning and containing 600 square feet or 0.0138 acre of land.

TRACT 4: (Fee Simple)

BEING all that certain air space above the vertical clearance height of approximately 23.00 feet over the crown of a portion of the 1200 square foot parcel of Harwood Street quit claimed and

abandoned by the City of Dallas, pursuant to Ordinance No. 16680 passed by City Council of the City of Dallas, on September 10, 1980, said portion of the aforesaid 1200 square foot parcel of Harwood Street being more particularly described as follows:

BEGINNING at a point in the Southwest line of Harwood Street (a 60 foot right-of-way), said point being North 44 degrees 48 minutes 00 seconds West, a distance of 71.60 feet from a found PK nail at the intersection of the Southwest line of Harwood Street with the Northwest line of Wenchell Lane (a 16 foot right-of-way);

THENCE North 44 degrees 48 minutes 00 seconds West, with the Southwest line of Harwood Street, a distance of 20.00 feet to a point for a corner;

THENCE North 43 degrees 47 minutes 49 seconds East, departing the Southwest line of Harwood Street, a distance of 30.01 feet to a point for a corner in the center line of Harwood Street;

THENCE South 44 degrees 48 minutes 00 seconds East, with the center line of Harwood Street, a distance of 20.00 feet to a point for a corner;

THENCE South 43 degrees 47 minutes 49 seconds West, departing the center line of Harwood Street, a distance of 30.01 feet to the Point of Beginning, containing 600 square feet or 0.0138 acre of land.

TRACT 5: (Non-Exclusive Easement)

Easement and license for parking, and rights of ingress and egress for the skybridge as contained in the Easement dated 9/29/1980, and recorded 9/30/1980 in Book 80192, Page 0272, as amended by First Amendment to Easement dated 12/21/2009, and recorded 04/05/2010 in Document No. 201000081089, Official Public Records of Dallas County, Texas.

## EXHIBIT "B"

## PERMITTED EXCEPTIONS

This conveyance of the Property is made subject to (i) the liens securing payment of ad valorem taxes for the current and all subsequent years, (ii) the exceptions as described on Schedule B to Grantee's loan title policy dated October 1, 2019 [Policy # M-5967-000380925] and (iii) those exceptions and encumbrances, to the extent same are valid, subsisting and in effect at this time, as follows: any and all restrictions, covenants, conditions and easements, if any, relating to the hereinabove described Property, as shown of record in the Real Property Records of Dallas County, Texas.

## BILL OF SALE AND ASSIGNMENT

WC 717 N HARWOOD PROPERTY, LLC, Delaware limited liability company ("Assignor") is conveying to SKW – B HARWOOD SELLER J, LLC, a Delaware limited liability company ("Assignee") that certain real property together with all buildings, fixtures and improvements thereto, more particularly described as follows:

Being that certain real property located at 717 N. Harwood, Dallas, Dallas County, Texas, and being more particularly described by metes and bounds in Exhibit "A" attached hereto and fully made a part hereof by reference for all purposes, together with all improvements thereon and all rights, hereditaments and appurtenances in anywise appertaining or belonging thereto, and all of Grantor's right, title and interest in and to all streets, alleys, roads, rights-of-way and other public ways adjacent thereto, and any strips and gores adjacent thereto (all of said property and interests being collectively referred to herein as the "Property").

THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor does hereby ASSIGN, TRANSFER, SET OVER and DELIVER to Assignee, its successors and assigns, all of Assignor's right, title and interest in and to the following (collectively, the "Assigned Property"):

1. All machinery, furniture, furnishings, equipment, computer software and hardware, accounts, escrows, documents, instruments, chattel paper, fixtures, inventory, materials, supplies, leases, deposits, contracts, franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, surveys, title insurance policies, permits, certificates of use and occupancy, consents, licenses, management agreements, leasing agreements, approvals, actions, refunds of real estate taxes and assessments, and other articles of personal property and accessions, appurtenances, renewals, replacements, and proceeds thereof, including, without limitation, the items identified on the schedule attached hereto as Exhibit "B".

2. All warranties, guaranties and bonds (express or implied) issued in connection with or arising out of (a) the purchase and repair of all fixtures, equipment and personal property attached to and located in, on or used in connection with the Property, including but not limited to all heating, air conditioning, plumbing, and electrical and lighting fixtures and equipment, and water heaters; and (b) the construction of any of the improvements located on the Property.

TO HAVE AND TO HOLD the Assigned Property unto Assignee, its successors and assigns, forever.

Assignor hereby constitutes and appoints Assignee as Assignor's true and lawful attorney, with full power of substitution, for it and in its name, place and stead, or otherwise, but on behalf of

2801093v2

and for the benefit of Assignee, to demand and receive from time to time any and all Assigned Property, tangible or intangible, hereby sold, assigned and conveyed, or intended so to be, and to get receipts and releases for and in respect of the same or any part thereof, and from time to time to institute and prosecute in the name of Assignor or otherwise, but at the expense and for the benefit of Assignee, any and all proceedings at law, in equity or otherwise, that Assignee may deem proper in order to collect, assert or enforce any claim, right or title, of any kind, in and to the Assigned Property hereby assigned and conveyed, or intended so to be, and to defend the said Assigned Property, and generally to do all and any such acts and things in relation thereto as Assignee shall deem advisable. Assignor hereby further agrees to execute, upon request from Assignee, any and all other instruments which might be reasonably required or necessary in connection with this Assignment.

All of the covenants, terms and conditions set forth herein shall be binding upon and inure to the benefit of the parties hereto, their respective successors and assigns.

[SIGNATURE PAGE FOLLOWS]

EFFECTIVE as of _____, 202_.

ASSIGNOR:

WC 717 HARWOOD PROPERTY, LLC,
a Delaware limited liability company

By:     WC 717 N HARWOOD MEZZ, LLC,
        a Delaware limited liability company,
        is Manager

        By_____
            Natin Paul, President

ASSIGNEE:

SKW – B HARWOOD SELLER J, LLC,
a Delaware limited liability company

By_____
    Authorized Representative

EXHIBIT "A"
LEGAL DESCRIPTION

TRACT 1: (Fee Simple)

BEING a 42,200 square feet or a 0.9688 acre tract of land situated in the J. Grisgby Survey, Abstract No. 495, City of Dallas, Dallas County, Texas, said tract being part of City Block 1/243, and said tract conveyed to Dallas PT 717 North Harwood Street Office Limited Partnership by deed recorded in Volume 2001157, Page 4818, Deed Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a set "x" cut on concrete pavement for a corner at the East corner of a right-of-way corner clip at the intersection of the Southwest line of Harwood Street (a 60 foot right-of-way) with the Southeast line of San Jacinto Street (a variable width right-of-way);

THENCE South 44 degrees 48 minutes 00 seconds East, with the Southwest line of Harwood Street, a distance of 263.47 feet to a found PK nail for a corner at the intersection of the Southwest line of Harwood Street with the Northwest line of Wenchell Lane (a 16 foot right-of-way);

THENCE South 44 degrees 49 minutes 57 seconds West, with the Northwest line of Wenchell Lane, a distance of 154.00 feet to a found PK nail for a corner, said point being the East corner of a tract of land conveyed to Cotton Lot L.P. by deed recorded in Volume 98050, Page 7896, Deed Records of Dallas County, Texas;

THENCE North 44 degrees 47 minutes 30 seconds West, departing the Northwest line of Wenchell Lane and with the common line of the herein described tract and the said Cotton Lot L.P. tract, a distance of 275.50 feet to a found "x" cut on concrete pavement for a corner in the Southeast line of San Jacinto Street;

THENCE North 45 degrees 00 minutes 00 seconds East, with the Southeast line of San Jacinto Street, a distance of 105.84 feet to a set "x" cut on concrete pavement at the beginning of a non-tangent curve to the left with a central angle of 04 degrees 00 minutes 40 seconds, a radius of 622.11 feet, a chord bearing of North 53 degrees 01 minutes 23 seconds East, and a chord distance of 43.54 feet;

THENCE Northeasterly, continuing with the Southeast line of San Jacinto Street and along said curve, an arc distance of 43.55 feet to a set "x" cut on concrete pavement for a corner at the West corner of the above said right-of-way corner clip;

THENCE South 87 degrees 00 minutes 28 seconds East, with the said right-of-way corner clip, a distance of 7.40 feet to the Point of Beginning.


TRACT 2: (Non-Exclusive Easement)

BEING a 40,417 square feet or a .9278 acre tract of land situated in the J. Grisgby Survey, Abstract No. 495, City of Dallas, Dallas County, Texas, said tract being part of City Block 246, and said easement rights conveyed to Dallas PT 717 North Harwood Street Office Limited Partnership by deed recorded in Volume 2001157, Page 4818, Deed Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a set 1/2 inch iron rod for a corner at the South corner of a right-of-way corner clip at the intersection of the Northeast line of Harwood Street (a 60 foot right-of-way) with the Southeast line of San Jacinto Street (a variable width right-of-way);

THENCE North 00 degrees 06 minutes 00 seconds East, with the said right-of-way corner clip, a distance of 14.17 feet to a set "x" cut on concrete pavement for a corner in the Southeast line of San Jacinto Street, said point being the North corner of the said right-of-way corner clip;

THENCE North 45 degrees 00 minutes 00 seconds East, with the Southeast line of San Jacinto Street, a distance of 142.91 feet to a set 1/2 inch iron rod for a corner;

THENCE South 44 degrees 51 minutes 00 seconds East, departing the Southeast line of San Jacinto Street, a distance of 264.67 feet to a set 1/2 inch iron rod for a corner;

THENCE South 45 degrees 10 minutes 20 seconds West, a distance of 153.14 feet to a found "x" cut on concrete pavement for a corner in the Northeast line of Harwood Street;

THENCE North 44 degrees 48 minutes 00 seconds West, with the Northeast line of Harwood Street, a distance of 254.21 feet to the Point of Beginning.


TRACT 3: (Non-Exclusive Easement)

BEING all that certain air space above the vertical clearance height of approximately 23.00 feet over the crown of a portion of the 1200 square foot parcel of Harwood Street quit claimed and abandoned by the City of Dallas, pursuant to Ordinance No. 16680 passed by City Council of the City of Dallas, on September 10, 1980, said portion of the aforesaid 1200 square foot parcel of Harwood Street being more particularly described as follows:

BEGINNING at a point in the center line of Harwood Street (a 60 foot right-of-way), said point being North 43 degrees 47 minutes 49 seconds East, a distance of 30.01 feet and North 44 degrees 48 minutes 00 seconds West, a distance of 71.60 feet from a found PK nail at the intersection of the Southwest line of Harwood Street with the Northwest line of Wenchell Lane (a 16 foot right-of-way);

THENCE North 44 degrees 48 minutes 00 seconds West, with the center line of Harwood Street, a distance of 20.00 feet to a point for a corner;

THENCE North 43 degrees 47 minutes 49 seconds East, departing the center line of Harwood Street, a distance of 30.01 feet to a found "x" cut on concrete pavement point for a corner in the Northeast line of Harwood Street;

THENCE South 44 degrees 48 minutes 00 seconds East, with the Northeast line of Harwood Street, a distance of 20.00 feet to a found "x" cut on concrete pavement for a corner;

THENCE South 43 degrees 47 minutes 49 seconds West, departing the Northeast line of Harwood Street, a distance of 30.01 feet to the Point of Beginning and containing 600 square feet or 0.0138 acre of land.


TRACT 4: (Fee Simple)

BEING all that certain air space above the vertical clearance height of approximately 23.00 feet over the crown of a portion of the 1200 square foot parcel of Harwood Street quit claimed and

abandoned by the City of Dallas, pursuant to Ordinance No. 16680 passed by City Council of the City of Dallas, on September 10, 1980, said portion of the aforesaid 1200 square foot parcel of Harwood Street being more particularly described as follows:

BEGINNING at a point in the Southwest line of Harwood Street (a 60 foot right-of-way), said point being North 44 degrees 48 minutes 00 seconds West, a distance of 71.60 feet from a found PK nail at the intersection of the Southwest line of Harwood Street with the Northwest line of Wenchell Lane (a 16 foot right-of-way);

THENCE North 44 degrees 48 minutes 00 seconds West, with the Southwest line of Harwood Street, a distance of 20.00 feet to a point for a corner;

THENCE North 43 degrees 47 minutes 49 seconds East, departing the Southwest line of Harwood Street, a distance of 30.01 feet to a point for a corner in the center line of Harwood Street;

THENCE South 44 degrees 48 minutes 00 seconds East, with the center line of Harwood Street, a distance of 20.00 feet to a point for a corner;

THENCE South 43 degrees 47 minutes 49 seconds West, departing the center line of Harwood Street, a distance of 30.01 feet to the Point of Beginning, containing 600 square feet or 0.0138 acre of land.


TRACT 5: (Non-Exclusive Easement)

Easement and license for parking, and rights of ingress and egress for the skybridge as contained in the Easement dated 9/29/1980, and recorded 9/30/1980 in Book 80192, Page 0272, as amended by First Amendment to Easement dated 12/21/2009, and recorded 04/05/2010 in Document No. 201000081089, Official Public Records of Dallas County, Texas.

EXHIBIT "B"
to Bill of Sale and Assignment

All of the following property, rights, interests and estates now owned, or hereafter acquired by Assignor:

a)     Equipment, Fixtures and Personal Property. All of Assignor's right, title and interest in and to all goods, machinery, equipment, furnishings, furniture, chattels, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures), building equipment, materials and supplies and other personal property of every kind and nature whatsoever owned by Assignor, or in which Assignor has or shall have an interest, now or hereafter located upon the Property, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Property, and all renewals or replacements of or substitutions for any of the foregoing, and all security deposits and advance rentals under lease agreements now or at any time hereafter covering or affecting any of the Property and held by or for the benefit of Assignor, all monetary deposits which Assignor has been required to give to any public or private utility with respect to utility services furnished to the Property, all funds, accounts, instruments, documents, general intangibles (including trademarks, trade names and symbols used in connection therewith) and notes or chattel paper arising from or by virtue of any transactions related to the Property, all permits, licenses, franchises, certificates and other rights and privileges obtained in connection with the Property, all oil, gas and other hydrocarbons and other minerals produced from or allocated to the Property, and all products processed or obtained from the above, the proceeds thereof, and all accounts and general intangibles under which such proceeds may arise and all proceeds thereof (collectively, the "**Personal Property**"), and all right, title and interest of Assignor in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), superior in lien to the lien of the deed of trust in favor of Assignee encumbering the Property (the "Deed of Trust");

b)     Leases and Rents. All of Assignor's right, title and interest in and to all leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any person is granted a possessory interest in, or right to use or occupy all or any portion of the Property, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "**Leases**"), whether before or after the filing by or against Assignor of any petition for relief under the Bankruptcy Code and all right, title and interest of Assignor, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Property whether paid or accruing before or after the filing by or against Assignor of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the indebtedness secured by the Deed of Trust;

c)     Condemnation Awards. All of Assignor's right, title and interest in and to all awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any

transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

d) <u>Insurance Proceeds.</u> All of Assignor's right, title and interest in and to all proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

e) <u>Tax Certiorari.</u> All of Assignor's right, title and interest in and to all refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

f) <u>Conversion.</u> All of Assignor's right, title and interest in and to all proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and condemnation awards, into cash or liquidation claims;

g) <u>Rights.</u> The right, in the name and on behalf of Assignor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Assignee in the Property;

h) <u>Agreements.</u> To the extent assignable, all of' Assignor's right, title and interest in and to all agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Property and any part thereof or respecting or pertaining to any business or activity conducted on the Property and any part thereof and all right, title and interest of Assignor therein and thereunder, including, without limitation, the right, upon the occurrence and during the continuance of an event of default under the Deed of Trust or any of the loan documents executed in connection therewith, to receive and collect any sums payable to Assignor thereunder;

i) <u>Trademarks.</u> To the extent assignable, all of' Assignor's right, title and interest in and to all tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

j) <u>Accounts.</u> All of Assignor's right, title and interest in and to all reserves, escrows and deposit accounts maintained by Assignor with respect to the Property, including, without limitation, any lockbox agreement and/or cash management account, together with all deposits or wire transfers made to such accounts, all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof;

k) <u>Letter of Credit.</u> All of Assignor's right, title and interest in and to all letter-of-credit rights (whether or not the letter of credit is evidenced by a writing) Assignor now has or hereafter acquires relating to the properties, rights, titles and interests referred to in <u>Section 1.1</u> of the Deed of Trust;

2801093v2

l)     <u>Tort Claims.</u> All of Assignor's right, title and interest in and to all commercial tort claims Assignor now has or hereafter acquires relating to the properties, rights, titles and interests referred to in <u>Section 1.1</u> of the Deed of Trust;

m)     <u>Interest Rate Cap Agreement.</u> The Interest Rate Cap Agreement between Assignor and Assignee's predecessor-in-interest, including, but not limited to, all "accounts", "chattel paper", "general intangibles" and "investment property" (as such terms are defined in the Uniform Commercial Code as from time to time in effect) constituting or relating to the foregoing; and all products and proceeds of any of the foregoing;

n)     <u>Other Rights.</u> Any and all other rights of Assignor in and to the items set forth in Subsections (a) through (m) above; and

o)     <u>Additional Assets</u>.  All other assets of Assignor.

All other capitalized terms used herein, but not defined herein shall have the meaning as stated in the Deed of Trust.

## ASSIGNMENT OF LEASES, RENTS AND SECURITY DEPOSITS

WC 717 N HARWOOD PROPERTY, LLC, Delaware limited liability company ("Assignor") is conveying to SKW – B HARWOOD SELLER J, LLC, a Delaware limited liability company ("Assignee") that certain real property together with all buildings, fixtures and improvements thereto, more particularly described as follows:

Being that certain real property located at 717 N. Harwood, Dallas, Dallas County, Texas, and being more particularly described by metes and bounds in Exhibit "A" attached hereto and fully made a part hereof by reference for all purposes, together with all improvements thereon and all rights, hereditaments and appurtenances in anywise appertaining or belonging thereto, and all of Grantor's right, title and interest in and to all streets, alleys, roads, rights-of-way and other public ways adjacent thereto, and any strips and gores adjacent thereto (all of said property and interests being collectively referred to herein as the "Property").

THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor does hereby ASSIGN, TRANSFER, SET OVER and DELIVER to Assignee, its successors and assigns, all of Assignor's right, title and interest in and to all of the leases covering any portion of the Property (the "Leases") as listed and described on the rent roll (the "Rent Roll") attached hereto as Exhibit "B" and incorporated herein by this reference, and all security and other deposits for the Leases including, without limitation, all of the rights, powers, estates and privileges of lessor or landlord in, to and under the Leases and rents to accrue thereunder, all rights of reversion of lessor or landlord, and all of the rights and benefits of every description whatsoever belonging or accruing to the benefit of the lessor or landlord in, to or under the Leases.

TO HAVE AND TO HOLD the Leases unto Assignee, its successors and assigns, forever. Assignor covenants, warrants and represents to Assignee as follows:

1.    The Rent Roll sets forth as of the effective date hereof a list and description of all of the Leases covering any portion of the Property; that all of the Leases listed thereon are in writing unless otherwise noted; and that there are no other lease or occupancy agreements, either oral or in writing, relating to the Property.

2.    That none of the lessees or tenants under the Leases have at any time made a cash, security or other deposit except as reflected on the Rent Roll, nor have any of the lessees or tenants paid any rent more than one (1) month in advance except as reflected thereon.

3.    That each of the Leases is presently in full force and effect and is valid and no default exists thereunder.

It is understood and agreed that, by its execution and acceptance hereof, Assignee assumes and agrees to perform all of the terms, covenants and conditions of the lessor or landlord in the Leases arising from and after the effective date hereof and during the term of Assignee's ownership of the Property, including, but not limited to, the obligation to repay, in accordance with the terms

2801092v3

of the Leases, all security deposits required to be repaid to the lessees or tenants under the Leases.

Assignor covenants and agrees to discharge any and all obligations of the lessor or landlord under the Leases arising prior to the effective date hereof and to indemnify, save and hold harmless Assignee from and against any and all liability, claims or causes of action existing in favor of or asserted by the lessee or tenant under any of the Leases arising out of or relating to Assignor's failure to perform any of the obligations of the lessor or landlord under the Leases arising prior to the effective date hereof.

Assignee covenants and agrees to discharge any and all obligations of the lessor or landlord under the Leases arising after the effective date hereof and to indemnify, save and hold harmless Assignor from and against any and all liability, claims or causes of action existing in favor of or asserted by the lessee or tenant under any of the Leases arising out of or relating to Assignee's failure to perform any of the obligations of the lessor or landlord under the Leases arising after the effective date hereof.

All of the covenants, terms and conditions set forth herein shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

[Signature Page Follows]

This Assignment is executed effective on _____, 202_, and the rents under the Leases will be prorated between Assignor and Assignee through that date.

ASSIGNOR:

WC 717 N HARWOOD PROPERTY, LLC,
a Delaware limited liability company

By:   WC 717 N HARWOOD MEZZ, LLC,
      a Delaware limited liability company,
      its Manager


      By_____
        Natin Paul, President


ASSIGNEE:

SKW – B HARWOOD SELLER J, LLC,
a Delaware limited liability company


By_____
  Authorized Representative

EXHIBIT "A"
LEGAL DESCRIPTION

TRACT 1: (Fee Simple)

BEING a 42,200 square feet or a 0.9688 acre tract of land situated in the J. Grisgby Survey, Abstract No. 495, City of Dallas, Dallas County, Texas, said tract being part of City Block 1/243, and said tract conveyed to Dallas PT 717 North Harwood Street Office Limited Partnership by deed recorded in Volume 2001157, Page 4818, Deed Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a set "x" cut on concrete pavement for a corner at the East corner of a right-of-way corner clip at the intersection of the Southwest line of Harwood Street (a 60 foot right-of-way) with the Southeast line of San Jacinto Street (a variable width right-of-way);

THENCE South 44 degrees 48 minutes 00 seconds East, with the Southwest line of Harwood Street, a distance of 263.47 feet to a found PK nail for a corner at the intersection of the Southwest line of Harwood Street with the Northwest line of Wenchell Lane (a 16 foot right-of-way);

THENCE South 44 degrees 49 minutes 57 seconds West, with the Northwest line of Wenchell Lane, a distance of 154.00 feet to a found PK nail for a corner, said point being the East corner of a tract of land conveyed to Cotton Lot L.P. by deed recorded in Volume 98050, Page 7896, Deed Records of Dallas County, Texas;

THENCE North 44 degrees 47 minutes 30 seconds West, departing the Northwest line of Wenchell Lane and with the common line of the herein described tract and the said Cotton Lot L.P. tract, a distance of 275.50 feet to a found "x" cut on concrete pavement for a corner in the Southeast line of San Jacinto Street;

THENCE North 45 degrees 00 minutes 00 seconds East, with the Southeast line of San Jacinto Street, a distance of 105.84 feet to a set "x" cut on concrete pavement at the beginning of a non-tangent curve to the left with a central angle of 04 degrees 00 minutes 40 seconds, a radius of 622.11 feet, a chord bearing of North 53 degrees 01 minutes 23 seconds East, and a chord distance of 43.54 feet;

THENCE Northeasterly, continuing with the Southeast line of San Jacinto Street and along said curve, an arc distance of 43.55 feet to a set "x" cut on concrete pavement for a corner at the West corner of the above said right-of-way corner clip;

THENCE South 87 degrees 00 minutes 28 seconds East, with the said right-of-way corner clip, a distance of 7.40 feet to the Point of Beginning.

TRACT 2: (Non-Exclusive Easement)

BEING a 40,417 square feet or a .9278 acre tract of land situated in the J. Grisgby Survey, Abstract No. 495, City of Dallas, Dallas County, Texas, said tract being part of City Block 246, and said easement rights conveyed to Dallas PT 717 North Harwood Street Office Limited Partnership by deed recorded in Volume 2001157, Page 4818, Deed Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a set 1/2 inch iron rod for a corner at the South corner of a right-of-way corner clip at the intersection of the Northeast line of Harwood Street (a 60 foot right-of-way) with the Southeast line of San Jacinto Street (a variable width right-of-way);

THENCE North 00 degrees 06 minutes 00 seconds East, with the said right-of-way corner clip, a distance of 14.17 feet to a set "x" cut on concrete pavement for a corner in the Southeast line of San Jacinto Street, said point being the North corner of the said right-of-way corner clip;

THENCE North 45 degrees 00 minutes 00 seconds East, with the Southeast line of San Jacinto Street, a distance of 142.91 feet to a set 1/2 inch iron rod for a corner;

THENCE South 44 degrees 51 minutes 00 seconds East, departing the Southeast line of San Jacinto Street, a distance of 264.67 feet to a set 1/2 inch iron rod for a corner;

THENCE South 45 degrees 10 minutes 20 seconds West, a distance of 153.14 feet to a found "x" cut on concrete pavement for a corner in the Northeast line of Harwood Street;

THENCE North 44 degrees 48 minutes 00 seconds West, with the Northeast line of Harwood Street, a distance of 254.21 feet to the Point of Beginning.

TRACT 3: (Non-Exclusive Easement)

BEING all that certain air space above the vertical clearance height of approximately 23.00 feet over the crown of a portion of the 1200 square foot parcel of Harwood Street quit claimed and abandoned by the City of Dallas, pursuant to Ordinance No. 16680 passed by City Council of the City of Dallas, on September 10, 1980, said portion of the aforesaid 1200 square foot parcel of Harwood Street being more particularly described as follows:

BEGINNING at a point in the center line of Harwood Street (a 60 foot right-of-way), said point being North 43 degrees 47 minutes 49 seconds East, a distance of 30.01 feet and North 44 degrees 48 minutes 00 seconds West, a distance of 71.60 feet from a found PK nail at the intersection of the Southwest line of Harwood Street with the Northwest line of Wenchell Lane (a 16 foot right-of-way);

THENCE North 44 degrees 48 minutes 00 seconds West, with the center line of Harwood Street, a distance of 20.00 feet to a point for a corner;

THENCE North 43 degrees 47 minutes 49 seconds East, departing the center line of Harwood Street, a distance of 30.01 feet to a found "x" cut on concrete pavement point for a corner in the Northeast line of Harwood Street;

THENCE South 44 degrees 48 minutes 00 seconds East, with the Northeast line of Harwood Street, a distance of 20.00 feet to a found "x" cut on concrete pavement for a corner;

THENCE South 43 degrees 47 minutes 49 seconds West, departing the Northeast line of Harwood Street, a distance of 30.01 feet to the Point of Beginning and containing 600 square feet or 0.0138 acre of land.

TRACT 4: (Fee Simple)

BEING all that certain air space above the vertical clearance height of approximately 23.00 feet over the crown of a portion of the 1200 square foot parcel of Harwood Street quit claimed and

abandoned by the City of Dallas, pursuant to Ordinance No. 16680 passed by City Council of the City of Dallas, on September 10, 1980, said portion of the aforesaid 1200 square foot parcel of Harwood Street being more particularly described as follows:

BEGINNING at a point in the Southwest line of Harwood Street (a 60 foot right-of-way), said point being North 44 degrees 48 minutes 00 seconds West, a distance of 71.60 feet from a found PK nail at the intersection of the Southwest line of Harwood Street with the Northwest line of Wenchell Lane (a 16 foot right-of-way);

THENCE North 44 degrees 48 minutes 00 seconds West, with the Southwest line of Harwood Street, a distance of 20.00 feet to a point for a corner;

THENCE North 43 degrees 47 minutes 49 seconds East, departing the Southwest line of Harwood Street, a distance of 30.01 feet to a point for a corner in the center line of Harwood Street;

THENCE South 44 degrees 48 minutes 00 seconds East, with the center line of Harwood Street, a distance of 20.00 feet to a point for a corner;

THENCE South 43 degrees 47 minutes 49 seconds West, departing the center line of Harwood Street, a distance of 30.01 feet to the Point of Beginning, containing 600 square feet or 0.0138 acre of land.

TRACT 5:  (Non-Exclusive Easement)

Easement and license for parking, and rights of ingress and egress for the skybridge as contained in the Easement dated 9/29/1980, and recorded 9/30/1980 in Book 80192, Page 0272, as amended by First Amendment to Easement dated 12/21/2009, and recorded 04/05/2010 in Document No. 201000081089, Official Public Records of Dallas County, Texas.

EXHIBIT "B"
RENT ROLL

**EXHIBIT B**

**Amounts Due As Of:**                                          11/1/2021

SKW -- B Harwood Seller J, LLC                                 717 N Harwood

| | |
|---|---|
| Principal: | $74,231,017.32 |
| Accrued Base Interest: | $1,126,724.97 |
| Default Interest on Principal: | $2,443,437.65 |
| Exit Fee: | $382,000.00 |
| Professional & Lender Fees: | $440,744.96 |
| Default Interest on Professional & Lender Fees: | $6,415.55 |
| **Total Due on or before 11/1/2021:** | **$78,630,340.46** |

| | |
|---|---|
| Less: Escrow Balance:[1] | ($4,817,634.07) |
| Less: Good Faith Deposit:[1] | ($75,000.00) |

| | |
|---|---|
| **Total Due on or before 11/1/2021:** | **$73,737,706.39** |

(1) Assumes Borrower to credit Lender full Escrow Balance and Good Faith Deposit on payoff

## 717 Harwood Legal & Lender Fees

| Type | | Amount | Date Paid | Default Interest Accrual (if Applicable) | | | Interest Due |
|---|---|---|---|---|---|---|---|
| | | | | Days | Default Rate | Per Diem | |
| Lender Legal Expenses | Legal | $6,267.53 | 4/20/2021 | 195.00 | 11.746% | $2.04 | $398.77 |
| Lender Administrative Expenses (Bank Fees) | Lender | $12.00 | 7/12/2021 | 112.00 | 11.746% | $0.00 | $0.44 |
| Lender Legal Expenses | Legal | $15,334.28 | 7/13/2021 | 111.00 | 11.746% | $5.00 | $555.36 |
| Lender Legal Expenses | Legal | $31,917.25 | 7/13/2021 | 111.00 | 11.746% | $10.41 | $1,155.95 |
| Lender Legal Expenses | Legal | $11,233.38 | 8/19/2021 | 74.00 | 11.746% | $3.67 | $271.23 |
| Lender Legal Expenses | Legal | $8,103.25 | 8/19/2021 | 74.00 | 11.746% | $2.64 | $195.65 |
| Lender Legal Expenses | Legal | $82,643.91 | 8/19/2021 | 74.00 | 11.746% | $26.97 | $1,995.41 |
| Lender Legal Expenses | Legal | $52,200.19 | 8/19/2021 | 74.00 | 11.746% | $17.03 | $1,260.36 |
| Lender Expense Reimbursement (Enforcement Expenses) | Lender | $4,889.39 | 8/30/2021 | 63.00 | 11.746% | $1.60 | $100.50 |
| Lender Legal Expenses | Legal | $12,469.71 | 10/4/2021 | 28.00 | 11.746% | $4.07 | $113.92 |
| Lender Legal Expenses | Legal | $40,277.60 | 10/4/2021 | 28.00 | 11.746% | $13.14 | $367.97 |
| Lender Legal Expenses (Invoiced and Unpaid) | Legal | $175,396.47 | | | | | |
| **Totals** | | **$440,744.96** | | | | | **$6,415.55** |